STATE OF CONNECTICUT *v.* JOHN DEJOSEPH

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 14-48039

Argued January 17—decided April 29, 1966

*William D. Graham,* of Hartford, for the appellant (defendant).

*Arnold Markle,* chief prosecuting attorney, for the appellee (state).

KOSICKI, J. The sole assignment of error is that the court refused to appoint counsel to represent the defendant, who was indigent and without funds and was charged with violating § 53-304 of the General Statutes in that he failed to support his wife and children. This offense is a misdemeanor punishable by a maximum penalty of not more than one year's confinement in jail. The defendant was convicted after a trial to the court, without a jury, and was sentenced to jail for a period of six months. At no stage of the proceedings was he represented by counsel. He appealed from the judgment and was released under bond of $1000. He has had assistance of competent counsel in the preparation and presentation of his appeal.[1] The defendant made no request for a finding of facts and thus we are deprived of the subordinate facts as found by the court and the conclusions of the court relative thereto, and particularly the fact of indigency asserted by the defendant.[2] Because of the impor-

---

[1] It appeared on oral argument that upon defendant's application counsel was supplied without cost to him by a legal aid organization.

[2] The defendant has ignored Practice Book § 979, concerning the necessity for a finding to review the conclusions of the court upon

tant constitutional right claimed to have been violated, and inasmuch as a certified transcript of the entire evidence has been annexed to the appeal as an exhibit, we shall consider the assigned error by a review of the entire record, as the parties have done in presenting this appeal.

The evidence and record disclose the following facts: On May 20, 1965, an arrest warrant was issued charging the defendant with nonsupport in violation of § 53-304.[3]    Following his arrest, he

the facts, as well as the provisions of §§ 989 and 990, which require that on appeal in a court case the assignment of errors shall be specific and the error claimed directly asserted in substantial compliance with Form 819, (A) and (B).

[3] "Sec. 53-304.  NONSUPPORT.    (a) Any person who neglects or refuses to furnish reasonably necessary support to his wife, child or parent shall be deemed guilty of nonsupport and shall be imprisoned not more than one year, unless he shows to the court before which the trial is had that, owing to physical incapacity or other good cause, he is unable to furnish such support.  Such court may suspend the execution of any jail sentence imposed, upon any terms or conditions that it deems just, may suspend the execution of the balance of any such sentence in a like manner, and, in addition to any other sentence or in lieu thereof, may order that the person convicted shall pay, through the family relations division of the circuit court, such support, in such amount as the court may find commensurate with the necessities of the case and the ability of such person, for such period as the court shall determine.  Any such order of support may, at any time thereafter, be set aside or altered by such court for cause shown.  Failure of any defendant to make any payment may be punished as contempt of court and, in addition thereto or in lieu thereof, the court may order the issuance of an execution in the same manner as is provided in section 17-324, which execution shall have the same precedence as is provided in section 52-362.  The amounts withheld under such execution shall be remitted to said family relations division by the person or corporation to whom the execution is presented, at such intervals as such execution directs.  For purposes of this section, the term 'child' shall include one born out of wedlock whose father has acknowledged in writing his paternity of such child or has been adjudged the father by a court of competent jurisdiction.    (b) Any person who violates any provision of this section may be prosecuted before any court of this state in the same manner as if such offense had been committed within the territorial jurisdiction of such court.    (c) A written agreement to support made with the family relations division

was warned of his right to counsel on May 21.[4] At that time he advised the court that he intended to seek an attorney. During the period between his arrest and his arraignment on May 28, he was free of actual custody under bail of $500. On May 28, before being put to plea, he was asked by the court (*Reicher, J.*) whether he had obtained a lawyer, and a colloquy ensued between the court and the defendant, all of which appears in the footnote.[5]

of the circuit court by the liable relative, when approved by a judge of the circuit court after his examination of such relative in court or in chambers and filed with said court, shall have the same force and effect as an order of support by the circuit court, and shall be modifiable and enforceable in the same manner as is provided herein for orders of support issued by the court."

[4] "Sec. 54-1b. PRESENTMENT OF PRISONER. ADVICE AS TO RIGHTS. BAIL. When any person is arrested without a warrant or under a warrant, except under a warrant issued under section 54-43, 54-163, or 54-169, such person shall be presented before the circuit court session next held in the circuit where the offense is alleged to have been committed. Before any person so arrested is put to plea, he shall be advised that he has a right to retain counsel, that he has a right to refuse to make any statement and that any statement he makes may be introduced in evidence against him. Each such person shall be allowed a reasonable opportunity to consult counsel and shall be admitted to bail if the offense is bailable." (Public Acts 1963, No. 126, § 1.)

[5] "The court: Did you get a lawyer? A.—No, Your Honor. The only advice I had is to ask the court for counsel. The court: I can't appoint a counsel. This is a misdemeanor. A.—That's all I've been advised. The court: Who advised you? A.—I talked to a couple of lawyers, and I can't afford it. The court: This is non-support. You know whether you supported or you didn't support. It's a misdemeanor, now. The only question here is working out your support. A.—I understand that, Your Honor. Mr. Russo [assistant prosecuting attorney]: Well, may I point out that a $500 bond is posted with a professional bondsman. The court: That's right. You had money to put up a bond. How much a week do you make? A.—I'm only working part time, Your Honor. The court: Well, how much do you make? A.—Thirty-five, forty dollars a week. The court: You're only working part time? Why can't you get a full-time job? A.—Because I need some medical aid, and I'm supposed to go to the hospital next month. The court: Stop kidding. Do you own a car? A.—No, sir. The court: Where do you live? A.—408 Main Street. The court: By yourself? A.—Yes, sir. The court: What does it cost you for a room? A.—Ten dollars

On June 10, the defendant was presented for trial. When asked by the court *(Holden, J.)* whether he had a lawyer, he said: "No, sir. I did ask the court for a lawyer but I haven't received any."

The prosecution then proceeded with the trial and presented as witnesses the wife of the defendant and a representative of the state welfare department. From the evidence presented, it clearly appears that the defendant and his wife intermarried on February 2, 1952; that from this union they have seven surviving children ranging in age from thirteen years to one and one-half years; that the defendant had been separated from his wife and family for four years; that the last-born child was conceived during a brief period of attempted reconciliation which failed to materialize; that the family of the defendant was on state aid and in the course of approximately four years had received from the state $14,561.20, at the rate of $290.75 per month; that the defendant had contributed very little toward his family's support and the burden fell almost entirely on the state; and that during

a week. The court: What does it cost you for food? A.—On the average of, maybe, eight, ten, twelve dollars. The court: You can hire a lawyer. You have enough left over to hire a lawyer. You're not supporting your family. I won't appoint a lawyer for you. You're well able to hire your own counsel. What do you want to do? Do you want us to put you to plea, and then you can decide what you want to do? Mr. Russo: The family relations [bureau] is requesting that he be put to plea today, Your Honor. The court: All right, put Mr. DeJoseph to plea. The clerk: John DeJoseph, Criminal Information 14-48039, you're charged with violation of Section 53-304, nonsupport, from January 20, 1964, to May 20, 1965. What is your plea, sir? A.—Not guilty. The court: All right. You have a right to trial by court or by jury. A.—By court. The court: All right. We'll continue it for a court trial—how about the eleventh, Friday? Mr. Patti [assistant family relations officer]: How about the tenth? The court: All right, I'll set it down for trial June eleventh. Same bond. Now, be ready to try your case—— Mr. Russo: Your Honor, June tenth, he indicated. The court: June tenth. All right, make it June tenth, now."

this period the defendant was incarcerated on conviction for nonsupport for 304 days from February 19 to December 18, 1964, during which time he had no earning capacity. After his release, he failed to make any payments toward the support of his family although he was employed on a part-time basis at a local restaurant and full-time employment was available to him if he chose to accept it. He had been employed before his incarceration. He had claimed at various times that some undisclosed illness prevented his fuller employment, but when he was advised by the welfare department to consult a physician and produce proof of physical disability, he refused to do so.

I

The basic claim of the defendant is that he was denied his constitutional right to counsel and deprived of the rights of due process and the aid of appointed counsel contrary to the guarantees of the sixth and fourteenth amendments to the constitution of the United States and article first, § 9, of the constitution of Connecticut (now article first, § 8). It requires no extended consideration on our part of the lengthy argument of the defendant that this constitutional guarantee may be invoked, or knowingly and intelligently waived, in all capital cases and in cases of grave crimes partaking of the character of felonies. See such cases as *Escobedo* v. *Illinois,* 378 U.S. 478; *Massiah* v. *United States,* 377 U.S. 201; *Gideon* v. *Wainwright,* 372 U.S. 335; *Eskridge* v. *Washington State Board,* 357 U.S. 214 (denial of transcript for use on appeal); *Griffin* v. *Illinois,* 351 U.S. 12 (same); *Carnley* v. *Cochran,* 369 U.S. 506; *Johnson* v. *Zerbst,* 304 U.S. 458; *Powell* v. *Alabama,* 287 U.S. 45; *Walker* v. *Johnston,* 312 U.S. 275; *State* v. *Reid,* 146 Conn. 227, 234.

These cases and others cited by the defendant are not determinative of the precise issue before us. In each of the above cases, the crime charged was one involving capital punishment or consisted of a felony for which the penalty imposed could be substantial imprisonment. Furthermore, in no case cited by the defendant was the fact of indigency questioned by the prosecution. It was either admitted or not denied, or the record was silent on that crucial point. In the present case, the record shows that the defendant was advised of his right to counsel and to bail, in conformity with § 54-1b of the General Statutes[6] (as then applicable; later amended by Public Acts 1965, Nos. 185, 436 § 1, which in no way affect adversely the right claimed by the defendant), and was admitted to bail; but (by a logical inference from his own statements) he made no effort to obtain counsel for the reason that he insisted on the right to the services of counsel appointed by the court.

## II

The defendant makes the broad claim that in all cases charging criminal offenses, including misdemeanors, an indigent accused is entitled, as a matter of constitutional right, to the services of court-appointed counsel at public expense. He points to no authority for this claim, either statutory or as enunciated in judicial decisions of the Supreme Court of the United States or of our own Supreme Court. He relies principally on what appear to be dicta in some of the individual opinions or decisions of the majority in cases before the United States Supreme Court or in decisions in other state jurisdictions and in federal courts. Among such cases cited by the defendant are *In re Johnson*, 62 Cal. 2d 325 (traffic offenses); *Harvey* v. *Mississippi*,

[6] See note 4 supra.

340 F.2d 263 (5th Cir.) (bootlegging); *Evans* v. *Rives,* 126 F.2d 633, 638 (D.C. Cir.) (nonsupport); *People* v. *Witenski,* 15 N.Y.2d 392 (apple stealing). In the first case cited, the defendant was convicted of a multiplicity of misdemeanor charges and received consecutive jail sentences totaling 900 days. The court held that in California, under its constitution, the right to assistance of counsel was not limited to felony cases but was equally guaranteed to persons charged with misdemeanors in a municipal or other inferior court. *In re Johnson,* supra, 329. In the *Harvey* case, supra, in which the accused was sentenced to a ninety-day jail term and the payment of a $500 fine upon a plea of guilty of the charge of illegal possession of whiskey, a misdemeanor, the judgment was set aside for failure of the court to inform the accused of his right to assistance of counsel; and it was held that a waiver of the right to counsel could not be presumed from the mere fact that the accused appeared without, or failed to request, counsel. No question of indigency appears to have been raised.

To the same effect was the decision in the *Witenski* case, supra, in which it was held that the defendants, who apparently were able to and, after sentence to jail for stealing apples of the value of about $2, did employ legal assistance, had not waived their rights to counsel understandingly, competently and intelligently, because the trial court did not properly inform them of their constitutional right to be represented by counsel. It may also be noted that § 308 of the New York Code of Criminal Procedure specifically provided that if a defendant appear for arraignment without counsel, "he must be asked if he desire the aid of counsel, and if he does the court must assign counsel." See *People* v. *Witenski,* supra, 396. We have no such statutory provision in Connecticut. In *Evans* v.

*Rives,* supra, which, of all the cases referred to, appears to bear the closest analogy to the case before us, the defendant was presented before the Juvenile Court and pleaded guilty to a charge of nonsupport of a minor child. The prosecution was brought by the board of public welfare. The proceeding, to say the least, was a most informal one and appears to have lacked the solemnity and due regard for the defendant's rights uniformly associated with judicial proceedings. In reversing the judgment of guilty, the United States Court of Appeals held that there had been no waiver of the defendant's constitutional right to the assistance of counsel because of the entry of a plea of guilty. It is clear from the decision that the defendant had not been warned of his right to the aid of counsel. There is nothing to indicate, however, except by way of obiter (p. 637), that the issue of indigency was presented on appeal or subjected to review. Thus, the question of the right to court-appointed counsel in the case of all misdemeanors in which the accused is indigent was not decided.

The other two cases brought to our attention which involved misdemeanors, *District of Columbia v. Clawans,* 300 U.S. 617, and *District of Columbia v. Colts,* 282 U.S. 63, we do not consider applicable because they were mainly determinative of the issue whether the accused in each case was entitled to a trial by jury. In *Clawans* the court held, in a prosecution for selling unused excursion tickets, a misdemeanor, that although trial by jury does not extend to every case, the severity of the penalty provided for, for an otherwise trivial offense, was deemed so serious as to make the offense comparable to a common-law crime and entitled the accused to a jury trial. Also, in the *Colts* case, the charge of driving an automobile recklessly so as to endanger property and individuals was held to be malum

in se and a grave offense indictable at common law; therefore the accused had the constitutional right to a trial by jury.

## III

Connecticut is one of the earliest states to adopt a public defender system. This system has been in operation for nearly half a century. For a historical review, see *State* v. *Reid*, 146 Conn. 227, 234. At the time of the present prosecution, the power of the Circuit Court to appoint counsel in a criminal case was set out in § 54-81a, as enacted in 1959, reading: "In any criminal action in the circuit court, the judge before whom the matter is pending shall, *if he determines that the interests of justice so require*, appoint an attorney to act as special public defender and represent the defendant. The judge shall allow a reasonable sum for such services and necessary disbursements, and such amount shall be paid by the state in the same manner as other court expenses." (Italics supplied.) By Public Acts 1965, No. 178, effective June 15, 1965, this section was repealed and replaced by more liberal and more comprehensive provisions, and, in particular, the office of public defender or special public defender was placed on a permanent basis, instead of on a temporary, case-by-case, basis.[7] The present law

---

[7] "Sec. 54-81a [1965]. PUBLIC DEFENDERS FOR THE CIRCUIT COURT. The judges of the circuit court shall appoint at least one public defender for each circuit and such additional assistant public defenders as they determine are necessary. The judges shall fix the term of office and salaries of such public defenders and assistant public defenders, determine the area to be served by each and shall have the power to remove them and fill vacancies. In any criminal action in the circuit court, the judge before whom the matter is pending shall, if he determines that the interests of justice so require, designate the public defender for such circuit or an assistant public defender to represent the defendant. The judge may allow a reasonable sum for necessary disbursements by such public defender or assistant public defender, and such amount shall be paid by the

also makes the public defender system in the Circuit Court more homogeneously similar to that prevailing in the Superior Court. See General Statutes §§ 54-80, 54-80a, 54-81.

This statutory change has in no way modified the scope of the court's power to designate a public defender to act for a particular indigent accused. It was and is the law that in any criminal action in the Circuit Court the judge before whom the matter is pending shall, if he determines that the interests of justice so require, appoint an attorney to represent the defendant. The statute did not and

state in the same manner as other court expenses. If any such public defender or assistant public defender is absent or disqualified to act in any cause pending before the court, the judge before whom such cause is pending may appoint a special public defender for such cause; or, on application of the public defender, any judge before whom a cause is pending may appoint a special assistant public defender to aid in such cause. Such judge shall fix the compensation of any such appointee. The public defender or assistant public defender may, in the performance of his regular duties, appeal to the appellate division of the circuit court and, if certification is sought and granted, to the supreme court. Reasonable expenses incurred in connection with such appeals shall be paid by the state in the same manner as other court expenses. Except in cases where the accused is charged with a violation of section 53-304 or 53-309, the circuit court shall require that any accused claiming indigency shall make disclosure under oath or under the penalties of perjury, either orally or on forms provided by such court, concerning his ability to retain counsel, as a condition of the appointment of a public defender for such accused. [Public Acts 1965, No. 178, § 1.]

"Sec. 54-81b. REPRESENTATION OF ACCUSED ON BIND OVER. When an accused represented by the public defender or an assistant public defender in the circuit court is bound over to the superior court, such public defender or assistant public defender may be appointed, on request of the public defender of the superior court, by the judge then presiding at the criminal term of the superior court, as a special assistant public defender to assist the public defender of the superior court in defending such accused in the superior court. Any special public defender so appointed shall receive no additional compensation but shall be excused from his duties in the circuit court during such time as he is defending such accused in the superior court and he shall be subject to all statutes and rules applicable to public defenders in the superior court. [Public Acts 1965, No. 178, § 2.]"

does not prescribe a definite standard or impose inflexible conditions under which the court can or cannot act. We take judicial notice of the practice and procedure followed in the Circuit Court in pursuance of which a trial judge may appoint, and in the past has appointed, counsel where the crime charged was a misdemeanor by definition but the elements of the offense were so grave that a conviction might bring down upon the defendant heavy and serious penalties and obliquitous social consequences, or the lack of counsel was so apt to result in injustice as to be fundamentally unfair. See *McNeal* v. *Culver*, 365 U.S. 109, 111. We are of the opinion that the appointment of a public or assistant public defender rests in the sound discretion of the trial court, and unless this discretion is shown to have been abused, the action of the court will not be disturbed.

In the case before us, it is clear that the fundamental question presented was whether the defendant had proved that he was entitled to counsel at public expense because he was indigent. The word "indigent" has been thus defined by our Supreme Court in *Weeks* v. *Mansfield*, 84 Conn. 544, 549: "The term 'indigent,' on the other hand [as distinguished from "pauper"], is one which in its common acceptation is used with more direct and single reference to financial ability and resources. It is ordinarily used to indicate one who is destitute of property or means of comfortable subsistence, and for that reason is needy or in want. Webster's New International Dictionary. As thus used, a pauper certainly fully supplies the conditions. But words oftentimes come to have a meaning in certain relations or as applied to certain conditions other than their ordinary meaning, and when so used they are to be construed accordingly in order that the intention of the user may be effectuated."

The defendant has based his assignment of error upon the assumption that he was indigent and, therefore, was entitled to counsel as a matter of constitutional right. The burden of proving the fact of indigency rested on him. Under our present law (see footnote 7) he can be examined under oath, subject to the penalties for perjury, concerning his ability to retain counsel, in all cases except where the charge is nonsupport (§ 53-304) or abandonment (§ 53-309). The court did not place the defendant under oath in questioning him concerning his earnings and ability to retain private counsel. The defendant had peculiar knowledge of his own economic status and of his ability to raise funds for his defense. It was therefore incumbent on him, as the moving party, to persuade the court by any means available to him that he was entitled to counsel at public expense. This he failed to do. See footnote 5. His mere assertion did not establish the validity of his claim. "A defendant cannot make a claim of fact and then call on the state affirmatively to disprove it. If the record fails to indicate that any such thing ever occurred, there would be nothing which the state could point to which would affirmatively show that it did not occur. There is no presumption of error in the trial of a case. An appellant, to substantiate the claims he makes, must bring before this court something more than his mere uncorroborated statement. See *United States* v. *Morgan,* 346 U.S. 502, 512 . . . . The defendant made no effort to obtain a finding from the trial judge as to the true facts . . . ." *State* v. *Nash,* 149 Conn. 655, 659.

It was within the defendant's power to produce a record of his earnings or assets by proof other than his own self-serving declarations. It was the function of the trial court to determine his credibility and to assess the honesty of his disclosures or

failure to disclose. We cannot review the conclusion of the court as to the fact of the defendant's indigency without retrying the case, and this we are not empowered to do. Whether indigency is a fact must be found by the trial court in the same way as any other fact. Where illness is feigned and delays are sought to defeat the ends of justice, it has been held that there was no error in denying counsel and proceeding with the trial. See, for example, *United States* v. *Arlen,* 252 F.2d 491 (2d Cir.); *Leino* v. *United States,* 338 F.2d 154 (10th Cir.); *Smartt* v. *Bomar,* 340 F.2d 593 (6th Cir.); *Relerford* v. *United States,* 309 F.2d 706, 708 (9th Cir.). For aught that appears, the defendant, by using a reasonable amount of effort, might have been able (but unwilling) to obtain counsel at his own expense. See *Smartt* v. *Bomar,* supra. The court could reasonably conclude that it was the defendant's mistaken belief that it was the state's duty to bestow upon him this further benefit as a kind of largess, in addition to providing for his family because of his failure or refusal to discharge his familial obligations.

There is no error.

In this opinion KINMONTH and LEVINE, Js., concurred.