STATE OF CONNECTICUT *v.* ANDREW J. MELECHINSKY

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 1211

Argued March 24—decided April 30, 1982

*Andrew J. Melechinsky,* pro se, the appellant (defendant).

*Jeffrey L. Kline,* deputy assistant state's attorney, for the appellee (state).

DALY, J. A jury convicted the defendant of six counts of attempted tampering with a juror in violation of General Statutes §§ 53a-154 (a) and 53a-49 (a).[1] He has appealed from the judgment rendered thereon, raising over fifty claims of error.

The jury could readily have found the following facts: Shortly after jurors were notified of their selection for jury service in Geographical Area No. 13 (hereinafter G.A. 13), they began to receive literature through the mail which included copies of the state and federal constitutions and the jurors' creed. Only the defendant requested a list of the jurors who had been called to serve during the July session from the G.A. 13 court clerk. After their selection as jurors on the defendant's case, which involved a charge of driving while his license was under suspension, the jurors received additional mailed material which concerned the charges pending against the defendant. These materials, which the jurors delivered to the G.A. 13 court clerk, listed the defendant's name and home address, and tended to coerce the jurors.

---

[1] General Statutes § 53a-154 (a) provides in pertinent part that "[a] person is guilty of tampering with a juror if he influences any juror in relation to any official proceeding to or for which such juror has been drawn, summoned or sworn."

General Statutes § 53a-49 (a) provides in pertinent part that "[a] person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be . . . ."

The defendant has appealed from the court's denial of his motion for judgment of acquittal for lack of sufficient evidence. When evaluating the propriety of the court's denial, we must ascertain whether the jury could reasonably have concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence sufficed to justify the verdict of guilty beyond a reasonable doubt. In reviewing the court's ruling, we must view the evidence in a light most favorable to the jury's verdict. Each essential element of the crime charged must be proved beyond a reasonable doubt; although the jury may draw reasonable, logical inferences from the proven facts, they may resort to neither speculation nor conjecture in reaching their verdict. *State* v. *Payne,* 186 Conn. 179, 181–82, 440 A.2d 280 (1982); *State* v. *Nieves,* 186 Conn. 26, 30, 438 A.2d 1185 (1982). Applying these principles, we find that the jury could reasonably have inferred that, as alleged, the defendant mailed the coercive material. Thus, the trial court properly denied the motion for judgment of acquittal.

The defendant also contends that the state did not prove his intent to commit the crime charged. The jury, as triers of fact, may infer intent from the conduct of an accused, as well as from any positive testimony that may be given for or against him. *State* v. *Fredericks,* 149 Conn. 121, 124, 176 A.2d 581 (1961); Holden & Daly, Connecticut Evidence § 66 (c). An examination of the evidence submitted for the jury's consideration discloses that while much of it was circumstantial, the verdict reached was nonetheless the product of a permissible view of the evidence.

The defendant next claims that he was deprived of the effective assistance of counsel. To procure the services of a public defender, an accused must comply with certain statutory procedures. General Statutes

§ 51-297 (a) states that an applicant must provide the court with "a written statement [given] under oath or affirmation setting forth his liabilities and assets . . . ." The defendant did not comply with this requirement. Moreover, the applicant for public defender services bears the burden of proving indigency. *State* v. *DeJoseph,* 3 Conn. Cir. Ct. 624, 636, 222 A.2d 752, cert. denied, 385 U.S. 982, 87 S. Ct. 526, 17 L. Ed. 2d 443 (1966). The defendant's failure to sustain his burden of proving indigency fully supports the trial court's denial of his application.

The defendant has also challenged the constitutionality of the statutes involved in this action. A party who challenges a statute on constitutional grounds bears a difficult burden, for the court must make every intendment in favor of constitutionality, and the defendant must establish invalidity beyond a reasonable doubt. *Seals* v. *Hickey,* 186 Conn. 337, 353, 441 A.2d 604 (1982); *State* v. *Olds,* 171 Conn. 395, 411, 370 A.2d 969 (1976); Holden & Daly, op. cit. § 60 (i), p. 107 (Sup. 1980). The defendant has not met this burden.

Finally, we reject any claim of bias on the part of the trial judge. The defendant did not comply with Practice Book § 997 at his trial and, thus, cannot now assert a claim of bias.[2] We also reject the claim that the trial court erred by ejecting the defendant from the courtroom at one point during the trial. To the contrary, we find that the court scrupulously adhered to the provisions of Practice Book § 892.[3] Moreover, we do not accept the defendant's claim that the trial court erred when ordering a presentence investiga-

---

[2] Practice Book § 997 provides in pertinent part that "[a] motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit . . . to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith."

[3] Practice Book § 892 provides: "Upon the direction of the judicial authority, a defendant may be removed from the courtroom during his trial when his conduct has become so disruptive that the trial cannot proceed in an orderly manner. . . . [W]henever the defendant is removed, the judicial authority shall instruct the jurors that such . . . removal is not to be considered in assessing the evidence or in determining guilt or innocence."

tion of him.[4]  We also decline to find that error resulted from the court's orienting the jury in the absence of the defendant.

With respect to the remaining claims of error, our review indicates that they are without merit.

There is no error.

In this opinion F. HENNESSY and SPADA, Js., concurred.

SEABOARD SURETY COMPANY *v.* LAWRENCE N. WATERBURY

APPELLATE SESSION OF THE SUPERIOR COURT

FILE NO. 1204

Argued February 24 – decided September 3, 1982

*Lawrence N. Waterbury,* pro se, the appellant (defendant).

*Jack L. Grogins,* for the appellee (plaintiff).

---

[4] General Statutes § 54-91a (a) provides in pertinent part that "any court may, in its discretion, order a presentence investigation for a defendant convicted of any crime or offense other than a capital felony."

DALY, J. On July 15, 1971, the plaintiff obtained a judgment by confession against the defendant in the Supreme Court of New York in the amount of $9028. This judgment was never satisfied before the defendant moved from New York to Connecticut. The present action was filed in 1979 and the trial court found that it was brought to obtain a judgment on this judgment in a Connecticut court.[1] The lower court held that the plaintiff was entitled to a judgment of $9028 plus costs and rendered judgment accordingly, from which the defendant has appealed.

The issue here concerns the exclusivity of our Uniform Enforcement of Foreign Judgments Act, which is codified in General Statutes §§ 52-604 through 52-609.[2] Section 52-604 defines "foreign judgment" as "any judgment, decree or order of a court of the United States or of any other court which is entitled to full faith and credit in this state, except one obtained by default in appearance or by confession of judgment." Section 52-605 authorizes the summary enforcement of a properly registered foreign judgment. That section provides that when a judgment creditor files a certified copy of a foreign judgment in the court in which its enforcement is sought, and certifies that this judgment was not obtained by

---

[1] The complaint in its prayer for relief merely sought a weekly order and stated that the matter in demand exceeded $7500. The trial court concluded, however, that what the plaintiff was actually seeking was a Connecticut judgment on the New York judgment.

[2] In 1973, Connecticut adopted the 1964 revised version of the Uniform Enforcement of Foreign Judgments Act promulgated by the National Conference of Commissioners on Uniform State Laws; 13 U.L.A. 171, 173–179 (1975); although our version differs in certain material respects central to this appeal. See Public Acts 1973, No. 73-498. Our version gives different treatment to judgments obtained by confession or by default in appearance, as does the New York act. See N.Y. Civ. Prac. Law §§ 5401–5402 (McKinney 1978). Since there are no reported Connecticut cases that have directly construed the act, however, the case law of the twenty jurisdictions adopting the 1964 act must be consulted to promote the goal of uniform interpretation. General Statutes § 52-608; see note, 72 A.L.R.2d 1255; see generally 28 U.S.C. 1963.

default in appearance or by confession of judgment, then "[s]uch foreign judgment shall be treated in the same manner as a judgment of a court of this state. . . ." General Statutes § 52-605 (b). The parties conceded, and the trial court found, that this statute could *not* be relied upon here, since the New York judgment was obtained by confession. The defendant's claim, both at trial and in this appeal, is that § 52-605 permanently barred the enforcement of this judgment in Connecticut and that the court erred, therefore, by rendering judgment for the plaintiff. This claim ignores the existence of General Statutes § 52-607, however, which is dispositive of the issue.

The trial court correctly held that § 52-607 preserved the common-law right of a judgment creditor to bring an independent action on the judgment.[3] This was a new action that was brought for judgment upon the foreign judgment. This proceeding was not a proceeding under § 52-605 to enforce the foreign judgment *itself*. Under § 52-605 a foreign judgment other than one by default of appearance or confession that was duly registered with a Connecticut court could be executed upon locally. These two statutes therefore allow different remedies for a judgment creditor. *Overmyer* v. *Eliot Realty*, 83 Misc. 2d 694, 701-702, 371 N.Y.S.2d 246 (1975); see also *McGill* v. *Robbins*, 231 Ark. 411, 413, 329 S.W.2d 540 (1959); *Alexander Construction Co.* v. *Weaver*, 3 Kan. App. 2d 298, 301, 594 P.2d 248 (1979); *Hudson* v. *Hudson*, 569 P.2d 521, 523 (Okla. App. 1976).

The § 52-605 proceeding, by which a foreign judgment that is not obtained by default of appearance or confession is treated the same as a judgment obtained in Connecticut, is a codification of the common-law

---

[3] "[General Statutes] Sec. 52-607. OTHER RIGHTS OF ACTION PRESERVED. The right of a judgment creditor to proceed by an action on the judgment or a motion for summary judgment in lieu of complaint instead of proceeding under sections 52-604 to 52-609, inclusive, remains unimpaired." For an excellent discussion of the common-law proceeding and the development of the Uniform Act, see Leflar, "The New Uniform Foreign Judgments Act," 3 Ark. L. Rev. 402 (1949).

rule of res judicata. See 2 Freeman, Judgments (5th Ed. 1925) §§ 627, 632. Under the common law, a final judgment that is rendered by a court of competent jurisdiction is *conclusive* of the rights of the parties in the same or any other judicial tribunal. 2 Freeman, op. cit. § 632; see also *Springfield Credit Union* v. *Johnson,* 123 Ariz. 319, 323, 599 P.2d 772 (1979). The effect of § 52-605, therefore, is to establish a foreign judgment that is not obtained by a default in appearance or by confession as a domestic judgment that is conclusive of the defendant's indebtedness. *Burchett* v. *Roncari,* 181 Conn. 125, 129, 434 A.2d 941 (1980); accord *Hospital Service* v. *Warehouse Production,* 102 Misc. 2d 872, 424 N.Y.S.2d 647 (1980); *Joplin Corporation* v. *State ex rel. Grimes,* 570 P.2d 1161, 1163 (Okla. 1977). Furthermore, the foreign judgment is not subject to collateral attack locally; *Joplin Corporation* v. *State ex rel. Grimes,* supra; 1 Freeman, op. cit. §§ 305, 325; see generally *Rathkopf* v. *Pearson,* 148 Conn. 260, 265, 170 A.2d 135 (1961); but must be given full faith and credit. U.S. Const., art. IV § 1; see generally *Krueger* v. *Krueger,* 179 Conn. 488, 490-91, 427 A.2d 400 (1980), and cases cited therein; *Rathkopf* v. *Pearson,* supra; accord *Springfield Credit Union* v. *Johnson,* supra; *Overmeyer* v. *Eliot Realty,* supra.[4]

Under § 52-607 a foreign judgment creditor who could or did not rely upon § 52-605 can still proceed by an independent action on the foreign judgment, since this remedy remains unimpaired under the statutory

---

[4] By providing a procedure for simply converting a properly registered foreign judgment into a Connecticut judgment, § 52-605 is accomplishing the Act's purpose of providing "a speedy and economical method of doing that which it is required to do by the Constitution of the United States. It also relieves creditors and debtors of the additional cost and harassment of further litigation which would otherwise be incident to the enforcement of the foreign judgment." Commissioners' Prefatory Note to the Uniform Enforcement of Foreign Judgments Act, 13 U.L.A. 171, 172 (1975); accord *Alexander Construction Co.* v. *Weaver,* 3 Kan. App. 2d 298, 301, 594 P.2d 248 (1979).

