STATE OF CONNECTICUT *v.* PAUL R. GUITARD
(AC 19285)

Lavery, C. J., and Schaller and Hennessy, Js.

Argued October 16, 2000—officially released January 30, 2001

*Tricia Jessica Johnson*, with whom, on the brief, was *Claudia D. Jones*, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Mark Solak*, state's attorney, and *Vincent J. Dooley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Paul Guitard, appeals from the judgment of conviction, rendered after a trial to the court, of three counts of assault in the second degree in violation of General Statutes § 53a-60 and four counts of risk of injury to a child in violation of General Statutes § 53-21. On appeal, the defendant claims that

the trial court improperly denied his (1) request for standby counsel and (2) motion for judgment of acquittal. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On November 8, 1996, the defendant arrived at the home of his former wife to pick up his two minor sons, Daniel, age six, and Raymond, age eight. Approximately thirty minutes after the defendant picked up his sons, his vehicle crossed the center line of a highway and collided head-on with another vehicle.

Thereafter, state troopers at the scene of the accident questioned the defendant while emergency medical service personnel attended to his children. The children received serious injuries as a result of the collision and were rushed to an intensive care unit. Daniel suffered severe head trauma from a depression in his skull, and Raymond suffered neck trauma that required a neck brace. The driver of the second vehicle suffered multiple fractures to his left leg.

Rescue and law enforcement personnel at the accident scene made a number of observations regarding the defendant's condition during the thirty-five minutes it took them to remove him from his vehicle. The troopers detected a strong odor of alcohol from the defendant and found five empty beer cans in a cooler located in the vehicle. The emergency workers who removed the defendant from his vehicle also noticed the odor of alcohol. Blood tests indicated that the defendant had a blood alcohol content of 0.08 percent. At the time of the accident, the defendant also was taking medication, which, according to his own testimony, can interfere with the breakdown of alcohol and allow more alcohol into the bloodstream.

Accident reconstructionists who analyzed the accident concluded that the collision occurred four and one-half feet over the yellow line and in the lane of

oncoming traffic. An analysis of the skid marks from the defendant's vehicle indicated that he did not apply his brakes or swerve away from the oncoming vehicle. There was no evidence adduced to establish a mechanical failure of the vehicle.

The defendant was arrested on January 3, 1997, and was charged with three counts of assault in the first degree in violation of General Statutes § 53a-59, three counts of assault in the second degree in violation of § 53a-60, three counts of assault in the second degree with a motor vehicle in violation of General Statutes § 53a-60d and four counts of risk of injury to a child in violation of § 53-21. Private counsel entered an appearance for the defendant on February 24, 1997. The court scheduled a pretrial conference for March 26, 1997, at which the defendant pleaded not guilty to all of the charges and elected to be tried to a jury.

On July 8, 1998, the defendant filed a pro se appearance. On August 6, 1998, the court canvassed the defendant regarding the pro se appearance and concluded that he had waived his right to counsel. The defendant also changed his election to be tried to a jury and requested a trial to the court. On October 15, 1998, the court denied the defendant's oral motion for judgment of acquittal. On November 20, 1998, the defendant was found not guilty of the counts of assault in the first degree and assault in the second degree with a motor vehicle, and guilty of the counts of assault in the second degree and risk of injury to a child.

On November 25, 1998, the defendant filed a motion for judgment of acquittal and a motion for a new trial, which the court denied on January 25, 1998. The court imposed a total effective sentence of fifteen years, execution suspended after eighteen months, with five years probation. Additional facts will be discussed where relevant to the issues on appeal.

## I

## A

The defendant claims that the court improperly denied his motion for standby counsel. Specifically, the defendant argues that the court's failure to inquire into his financial status when he claimed to be indigent denied him his constitutional right to counsel. We disagree.

The following additional facts are relevant to this issue. On August 6, 1998, before his trial began, the defendant waived his right to counsel. During the canvassing, the defendant admitted that he "exceed[ed] the guidelines for a public defender." On September 1, 1998, the defendant moved for appointment of standby counsel, claiming that he could not afford counsel and that he desired standby counsel from the public defender's office for consultation purposes. The defendant admitted that he was employed and that "as such I don't meet the strict requirements of indigency." The court denied the motion, stating that "I don't feel that what you've said to the court rises to the level of extraordinary circumstances, and I frankly feel that it's being asked for purposes of delay."

"We begin our analysis with the proposition that a defendant does not have a state or federal constitutional right to standby counsel. See *State* v. *Gethers*, 197 Conn. 369, 385–87, 497 A.2d 408 (1985). Once a defendant has properly embarked on the path of self-representation, his constitutional right to counsel ceases. . . . The defendant's claim that he was denied the effective assistance of counsel is without merit because after deciding to proceed pro se, he had no constitutional right to the effective assistance of counsel in any capacity. The language and application of Practice Book §§ 962 through 964 [now §§ 44-4 and 44-5] are based on United States Supreme Court precedent and, accordingly, meet

constitutional standards." (Citation omitted.) *State* v. *Oliphant*, 47 Conn. App. 271, 281, 702 A.2d 1206 (1997), cert. denied, 244 Conn. 904, 714 A.2d 3 (1998).

At the outset, we note that the defendant does not call into question the validity of his initial waiver of counsel or the court's decision to allow him to proceed pro se. His claim attempts, in part, to equate a denial of a request for standby counsel with a denial of his right to counsel. Once the defendant "embarked on the path of self-representation," however, his constitutional right to counsel ceased. Id. His constitutional claim is, therefore, without merit.

B

We next address the defendant's claim that the court's refusal to grant his motion for standby counsel constitutes an abuse of discretion. We disagree.

"The standard of review to be applied when reviewing a denial of a request for alternate counsel is whether the trial court abused its discretion in determining that a factual basis did not exist for granting the request." *State* v. *High*, 12 Conn. App. 685, 690, 533 A.2d 1217 (1987), cert. denied, 207 Conn. 801, 540 A.2d 74 (1988). The appointment of counsel is governed by Practice Book § 44-4, which provides that "[w]hen a defendant has been permitted to proceed without the assistance of counsel, the judicial authority may appoint standby counsel, especially in cases expected to be long or complicated or in which there are multiple defendants. A public defender or special public defender may be appointed as standby counsel only if the defendant is indigent and qualifies for appointment of counsel under General Statutes § 51-296,[1] except that in extraordinary

[1] General Statutes § 51-296 (a) provides in relevant part: "In any criminal action . . . the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent as defined under this chapter, designate a public defender, assistant public defender or deputy assistant public defender to represent such indigent defendant . . . . If it appears to the court at a later date that, if

circumstances the judicial authority, in its discretion, may appoint a special public defender for a defendant who is not indigent." "[T]he applicant for public defender services bears the burden of proving indigency." *State* v. *Melechinsky*, 38 Conn. Sup. 464, 467, 451 A.2d 585 (1982).

The defendant, by his own admission and given his state of employment, could not satisfy the statutory definition of "indigent" under Practice Book § 44-4 and General Statutes § 51-297 (f). See footnote 1. The only basis, therefore, for the appointment of a public defender would be if the defendant could establish that there were "extraordinary circumstances"; Practice Book § 44-4; mandating such an appointment. Other than his statement that he was filing for bankruptcy, the defendant made no offer of proof as to the facts of

convicted, the sentence of an indigent defendant for whom counsel has not been appointed will involve immediate incarceration or a suspended sentence of incarceration with a period of probation, counsel shall be appointed prior to trial or the entry of a plea of guilty or nolo contendere."

General Statutes § 51-297 provides in relevant part: "(a) A public defender, assistant public defender or deputy assistant public defender shall make such investigation of the financial status of each person he has been appointed to represent or who has requested representation based on indigency, as he deems necessary. He shall cause the person to complete a written statement under oath or affirmation setting forth his liabilities and assets, income and sources thereof, and such other information which the commission shall designate and require on forms furnished for such purpose.

\* \* \*

"(f) As used in this chapter 'indigent defendant' means (1) a person who is formally charged with the commission of a crime punishable by imprisonment and who does not have the financial ability at the time of his request for representation to secure competent legal representation and to provide other necessary expenses of legal representation and (2) a child who has a right to counsel under the provisions of subsection (a) of section 46b-135 and who does not have the financial ability at the time of his request for representation to secure competent legal representation and to provide other necessary expenses of legal representation.

"(g) If the Chief Public Defender or anyone serving under him determines that an individual is not eligible to receive the services of a public defender under this chapter, the individual may appeal the decision to the court before which his case is pending."

his situation that would convince us that the court abused its discretion in denying his motion for appointment of standby counsel. "The defendant's failure to sustain his burden of proving indigency fully supports the trial court's denial of his application." *State v. Melechinsky*, supra, 38 Conn. Sup. 467.

The defendant cites *State v. Hamilton*, 228 Conn. 234, 636 A.2d 760 (1994), as a basis for concluding that the court abused its discretion. The facts in the present case, however, are not analogous to those in *Hamilton*. The issue in *Hamilton* was whether the court's denial of a motion for a continuance constituted an abuse of discretion. See id., 239. A denial of a request for standby counsel was not at issue. The court in the present case did not, in explaining why it considered the defendant's motion to be a delay tactic, violate any rule of law set forth in *Hamilton*.

The defendant further argues that the court was required to conduct an evidentiary hearing before denying his motion to determine whether his situation merited the appointment of standby counsel. "We consistently have held that, unless otherwise required by statute, a rule of practice or a rule of evidence, whether to conduct an evidentiary hearing generally is a matter that rests within the sound discretion of the trial court." *State v. Nguyen*, 253 Conn. 639, 653, 756 A.2d 833 (2000). Moreover, the office of the public defender is the only entity upon which a statutory duty is imposed to investigate a claim of indigency. See General Statutes § 51-297 (a).[2] The court, therefore, had no statutory duty to conduct an evidentiary hearing and did not abuse its discretion in failing to conduct such a hearing.

The defendant also relies on *State v. Harris*, 5 Conn. Cir. Ct. 313, 250 A.2d 719 (1968), to support his argument

[2] See footnote 1.

that an evidentiary hearing was required. This reliance is misplaced. In *Harris*, the defendant applied for a public defender and, in doing so, attested, under oath, to his indigence. Id., 313–14. The court granted the request and appointed a public defender. After the defendant was convicted, the state moved to discharge the public defender, and the court granted the motion without holding a hearing. On appeal, the trial court's action was held to be improper. Id., 315–16.

The present case is distinguishable from *Harris*. Unlike in *Harris*, the defendant here did not fill out any application under oath attesting to his indigence. Likewise, the defendant had not been found to be indigent like the defendant in *Harris*. The defendant here was represented by a private attorney, whereas the defendant in *Harris* was represented by a public defender. Finally, the defendant here in fact admitted that he did not satisfy the definition of indigence. We conclude that the court did not abuse its discretion in denying the defendant's motion for standby counsel.

## II

The defendant's second claim is that there was insufficient evidence to convict him of assault in the second degree and risk of injury to a child. Specifically, the defendant argues that there was insufficient evidence that he caused the accident, that he caused the injuries resulting from the accident and that he was reckless. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a

reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 732, 759 A.2d 995 (2000).

"As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [trier of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Barnett*, 53 Conn. App. 581, 586–87, 734 A.2d 991, cert. denied, 250 Conn. 919, 738 A.2d 659 (1999).

## A

To convict a defendant of assault in the second degree, the state must prove that the defendant recklessly caused serious physical injury to another person by means of a deadly weapon or a dangerous instrument.[3] General Statutes § 53a-60 (a) (3). The defendant specifically attacks the evidence adduced by the state to establish the first and second elements, claiming that the state failed to establish recklessness and causation beyond a reasonable doubt.

General Statutes § 53a-3 (13) defines "recklessness" and provides that "[a] person acts 'recklessly' with

---

[3] General Statutes § 53a-3 (7) provides in relevant part that a " '[d]angerous instrument' . . . includes a 'vehicle' as that term is defined in this section . . . ."

General Statutes § 53a-3 (8) provides in relevant part that " '[v]ehicle' means a 'motor vehicle' . . . ."

respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . ." Furthermore, General Statutes § 53a-7 provides that "when reckless-ness or criminal negligence is an element of the crime charged, if the actor, due to self-induced intoxication, is unaware of or disregards or fails to perceive a risk which he would have been aware of had he not been intoxicated, such unawareness, disregard or failure to perceive shall be immaterial. As used in this section, 'intoxication' means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body."

In the present case, the state adduced evidence that the defendant had consumed sufficient quantities of alcohol to create a blood alcohol content of 0.08 per-cent. The defendant also ingested medication, which possibly enhanced the effect of the alcohol that he had consumed. The defendant admitted that he was fatigued when he picked up the children on the evening of the accident. Considering the combined effects of his fatigue and alcohol consumption, the jury reasonably could have concluded that operating a motor vehicle at the time of the accident constituted a substantial and unjustifiable risk.

The defendant also attacks the court's finding that he caused the accident. "In order for legal causation to exist in a criminal prosecution, the state must prove beyond a reasonable doubt that the defendant was both the cause in fact, or actual cause, as well as the proxi-mate cause of the victim's injuries. . . . In order that conduct be the actual cause of a particular result it is

almost always sufficient that the result would not have happened in the absence of the conduct; or, putting it another way, that but for the antecedent conduct the result would not have occurred. . . . On the other hand, proximate cause requires that the forbidden result which actually occurs must be enough similar to, and occur in a manner enough similar to, the result or manner which the defendant intended (in the case of crimes of intention), or the result or manner which his reckless or negligent conduct created a risk of happening (in the case of crimes of recklessness and negligence) that the defendant may fairly be held responsible for the actual result even though it does differ or happens in a different way from the intended or hazarded result . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Leroy*, 232 Conn. 1, 5–6 n.6, 653 A.2d 161 (1995).

The defendant's attack on the evidence that was adduced to prove that he caused injury to the victims of the accident is similarly unavailing. The state produced accident reconstruction testimony that the defendant crossed into the lane of oncoming traffic and did not appear to decelerate his vehicle. Considering the evidence that he had consumed alcohol and medication that enhanced the effect of the alcohol, the court's conclusion that he was both the actual and proximate cause of the injuries is not unreasonable. We will not now entertain the defendant's request that we discount the state's evidence and give greater weight to evidence proffered by him. "The trier is the judge of the credibility of all the witnesses and the weight to be given their testimony and, therefore, has the right to accept part or disregard part of a witness' testimony." *In re Hector L.*, 53 Conn. App. 359, 366, 730 A.2d 106 (1999).

### B

To convict a defendant of risk of injury to a child, the state must prove that the defendant "wilfully or

unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . ." General Statutes § 53-21 (1). The defendant again attacks the evidence establishing causation and recklessness.

To convict a defendant of risk of injury to a child, a court must find that the defendant "acted wilfully and that he either intended the resulting injury to the victim, or he knew that the injury would occur, or that his conduct was of such a character that it demonstrated a reckless disregard of the consequences." (Internal quotation marks omitted.) *State* v. *Cutro*, 37 Conn. App. 534, 539, 657 A.2d 239 (1995). As we stated in part II A of this opinion, the record adequately supports the court's finding that the defendant acted recklessly and that his recklessness caused injury to his children. We therefore conclude that there was sufficient evidence for the court to convict the defendant of assault in the second degree and risk of injury to a child.

The judgment is affirmed.

In this opinion the other judges concurred.