STATE OF CONNECTICUT *v.* DONALD FLEMMING
(AC 29858)

Flynn, C. J., and Bishop and Hennessy, Js.

Argued March 12—officially released August 18, 2009

*Cameron R. Dorman*, special public defender, for the appellant (defendant).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Jason Germain*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Donald Flemming, appeals from the judgments of the trial court revoking

his probation pursuant to General Statutes (Rev. to 2005) § 53a-32.[1] On appeal, the defendant claims that the court improperly (1) determined that he had effectively waived his right to the assistance of counsel for the purposes of the violation of probation hearing and (2) failed to make an adequate investigation into whether he was indigent and therefore qualified for representation by the public defender's office. We conclude the court did not abuse its discretion in determining that

---

[1] General Statutes (Rev. to 2005) § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. . . . Upon such arrest and detention, the probation officer shall immediately so notify the court or any judge thereof. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation or conditional discharge, shall be advised by the court that such defendant has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in such defendant's own behalf.

"(b) If such violation is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

We note that § 53a-32 was revised in 2008. See Public Acts 2008, No. 08-102, § 7. Those amendments, however, are not relevant to this appeal. Therefore, all references to § 53a-32 hereafter are to the 2005 revision.

the defendant, who was free on bond, had waived his right to counsel after having received nine continuances over eight months to obtain private counsel and having been determined ineligible for appointment of the public defender. We further conclude that the court made adequate inquiry of the public defender concerning the defendant's eligibility and that the record discloses that the defendant took no appeal under General Statutes § 51-297 (g) to the court from that determination. Consequently, we affirm the judgments of the trial court.

The record reveals the following facts. On April 10, 2006, following a court trial, the defendant was convicted, under two separate criminal docket numbers, of one count of possession of narcotics in violation of General Statutes § 21a-279 (a), one count of risk of injury to a child in violation of General Statutes § 53-21 and one count of failure to appear in the first degree in violation of General Statutes § 53a-172. The defendant was sentenced to two concurrent terms of four years incarceration, execution suspended, and three years probation. The standard conditions of probation, to which the defendant agreed, included that he not violate any federal or state criminal law. The defendant subsequently was arrested and charged with assault in the second degree in violation of General Statutes § 53a-60 for stabbing Matthew Roscoe on September 23, 2006. A warrant for the defendant's arrest was obtained by the defendant's probation officer in January, 2007.

On December 4, 2007, the court, *Alander, J.*, conducted a violation of probation hearing pursuant to § 53a-32 at which the defendant appeared without counsel. Upon the court's inquiry as to whether the defendant desired the assistance of counsel and whether he had applied for representation by the public defender's office, the defendant stated that he was attempting to secure private counsel but had been unable to obtain funds to do so. He also stated that he had not applied for the services of the public defender and did not

intend to apply, apparently due to a negative experience with a specific public defender in the past. The court asked the defendant how he intended to pay for an attorney, and the defendant related his intention to ask his family for a loan. The prosecutor informed the court that the defendant had been given nine continuances to that point to allow the defendant an opportunity to obtain counsel.

The court noted the fact that the matter already had been continued for eight months, and it expressed concern that the defendant's attempts to retain counsel might not be as ardent as they could be due to the fact that he currently was released on bond.[2] The court called a recess to allow the public defender's office to review an application from the defendant to determine whether he was eligible for its services. Upon learning of the defendant's refusal to apply to the public defender

---

[2] The following colloquy took place between the court and the defendant:

"The Court: Have you been trying [to secure counsel] since April . . . ?

"[The Defendant]: Yes.

"The Court: See, here's the problem. I can't give you forever. And, you know, the concern that one might have is that are you really trying to get a lawyer or since you're out on—

"[The Defendant]: Yes.

"The Court: Just hear me out for a minute. Since you're out on bond and a delay doesn't really hurt you because you're out on bond, you know, maybe you're not trying as hard as you really need to try to get a lawyer, because, you know, you don't mind continuing things because your life goes on as before.

"So, at some point there needs to be an end to this. And so if you are eligible for a public defender, do you want to be represented by a public defender?

"[The Defendant]: Uh-uh, because—

"The Court: You're shaking your head no?

"[The Defendant]: Cause at first [attorney] Gannon—Gannon told me, like, a whole different story. I'm getting like a whole—

"The Court: Well, I don't really—here's the problem. The problem is, if you've been given since April to get an attorney, it's now December, that's eight months. That's a long time. And at some point we need to move forward, and you've been given every opportunity to get a lawyer, and for whatever reason haven't gotten one. So, that's the problem I'm facing."

Attorney Gannon's first name is not apparent from the record.

during the recess, the court reviewed with the defendant his right to counsel, including his right to appointed counsel should he be found indigent, the dangers of proceeding without counsel, the nature of the proceedings, the charge against him and the potential punishment he faced.[3] The defendant maintained that he would

[3] The colloquy between the court and the defendant was as follows:

"The Court: Now, it's my understanding . . . from the public defender's office, that you refused to apply for their services; is that correct?

"[The Defendant]: Yes.

"The Court: Now, I just want to go over a couple of things with you. Do you understand that if you're not—if you cannot afford to hire an attorney and you're found to be indigent, you could have an attorney appointed for you from the public defender's office; do you understand that?

"[The Defendant]: Yes.

"The Court: And it's my understanding that you don't want to pursue that option; is that right?

"[The Defendant]: Yes.

"The Court: And you understand that if you end up going forward without an attorney, you could be at a severe disadvantage; do you understand that?

"[The Defendant]: Yes.

"The Court: You don't know the rules of criminal evidence, correct?

"[The Defendant]: No.

"The Court: You don't know the rules of criminal procedure, correct?

"[The Defendant]: No.

"The Court: And you understand that [the prosecutor] does.

"[The Defendant]: Yes.

"The Court: And that the rules of evidence are going to apply to this proceeding. The rules of criminal procedure are going to apply to this proceeding, and the fact that you're not a lawyer, if you end up representing yourself, I'm not going to cut you any slack for that. Those rules are still going to apply. They're going to apply to the state; they're going to apply to you; do you understand that?

"[The Defendant]: Yes.

"The Court: And you understand that this is a violation of probation hearing?

"[The Defendant]: Yes.

"The Court: And that you're facing four years of incarceration.

"[The Defendant]: Uh-huh.

"The Court: That if I find that you violated probation and if I find that the purposes of probation are no longer being served, that I could ultimately sentence you to four years in jail, if you're found to have violated your probation; do you understand that?

"[The Defendant]: Yes.

"The Court: And you understand the claim is that you committed—that you violated the criminal law while you were out on probation, that you assaulted someone with a knife on September 23, 2006; do you understand that?

hire an attorney. The court provided the defendant an additional continuance, admonishing him that it would be the last: "If you don't have a lawyer here to represent you on that date, you're going to represent yourself. I'm going to find at that point that you waived your right to have a lawyer represent you unless I hear something different, you know, maybe change my mind, and you're going to go forward representing yourself, and I'm not going to be giving you another continuance. There's going to be an end date to all this, and I'm going to give you the end date . . . ." The hearing was scheduled to resume on January 4, 2008.

On January 4, 2008, the defendant appeared at the violation of probation hearing again without counsel. He indicated that he was unable to raise funds to hire a private attorney. The court inquired whether the defendant intended to represent himself, to which the defendant replied, "I plan to." The court took a recess to allow the defendant to apply for a public defender. When the court resumed, attorney Matthew J. Ramia of the public defender's office stated for the record that, on the basis of the information provided by the defendant, specifically, the fact that he previously had posted $200,000 in bonds, the defendant was ineligible for the services of the public defender. Ramia also stated, "[t]o be honest, Judge, the application is not filled out fully, I think, because it doesn't make any sense." The court then confirmed the defendant's ineligibility with Ramia. The defendant did not disagree with or object in any way to the public defender's determination.

---

"[The Defendant]: Yes.

"The Court: That's what the claim is. And you still don't want to apply—knowing all this, knowing everything I told you, what you're facing, the disadvantages you're under, you still don't want to apply for a public defender; is that correct?

"[The Defendant]: Yes."

Thereafter, the court addressed the defendant: "So . . . since you're not eligible for a public defender and you haven't obtained private counsel, at this point you will need to represent yourself. I find that your failure to obtain private counsel means that you effectively waived your right to the assistance of counsel. You have been given months and months and months to obtain private counsel, and unfortunately you have not done so. And I'm not in a position at this point to continue this matter any further." The court then explained to the defendant the procedure to be followed at the hearing, the charge against him and his rights regarding presentation of his case. The prosecutor indicated that on December 4, 2007, the date of the previous hearing, he had supplied the defendant with a complete case file.

Following testimony from the defendant's probation officer and Roscoe, the court found in the evidentiary phase of the hearing that the state had proven by a preponderance of the evidence that the defendant stabbed Roscoe on September 23, 2006, and, thus, had violated § 53a-60. The court therefore found that the defendant had violated his probation. Following statements from the prosecutor and the defendant in the dispositional phase of the hearing, the court determined that the rehabilitative purposes of the defendant's probation were no longer being served. The court revoked the defendant's probation, imposing a sentence of forty-two months for each criminal docket number, to be served concurrently. This appeal followed.[4]

---

[4] The defendant subsequently was convicted of the underlying offense, assault in the second degree in violation of § 53a-60, on January 31, 2008. His appeal is not moot, however, because his claims pertain to both the evidentiary phase and the dispositional phase of his violation of probation hearing. See State v. Preston, 286 Conn. 367, 381–82, 944 A.2d 276 (2008) (holding that "when the defendant has raised a claim that the trial court abused its discretion in rendering its judgment during the dispositional phase, practical relief is available even when there is no live controversy as to whether the defendant committed the underlying offense and, therefore, the claim is not moot").

As a preliminary matter, we address the reviewability of the defendant's two claims on appeal. The defendant made no objection to the court's finding that by his conduct he had effectively waived his right to counsel or to the court's failure to investigate further into his eligibility for the services of the public defender. He therefore seeks review of both claims pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We afford review of the claims because the record is adequate and the right to counsel in violation of probation hearings is of constitutional magnitude. See *Gentry* v. *Warden*, 167 Conn. 639, 645, 356 A.2d 902 (1975), citing *Gagnon* v. *Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). Because we conclude that no constitutional violation clearly exists, the defendant cannot prevail.[5]

I

The defendant first claims that the court improperly determined that he had effectively waived his right to counsel. Specifically, the defendant argues that he did not clearly and unequivocally assert a desire to proceed pro se, and further, did not voluntarily, knowingly and intelligently waive his right to counsel. We cannot agree.

We begin with our standard of review. "[T]he determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. . . . This important decision rests

---

[5] The defendant also requests review of his claims pursuant to the plain error doctrine. See Practice Book § 60-5. Outside of a citation to the applicable rule of practice and a brief case law citation defining the doctrine, the defendant has provided this court no separate analysis under the doctrine. We therefore decline to review the claims for plain error, concluding that they are briefed inadequately. See *Pestey* v. *Cushman*, 259 Conn. 345, 373, 788 A.2d 496 (2002).

within the discretion of the trial judge." (Internal quotation marks omitted.) *State* v. *Caracoglia*, 95 Conn. App. 95, 103–104, 895 A.2d 810, cert. denied, 278 Conn. 922, 901 A.2d 1222 (2006). We must here determine, therefore, whether the court abused its discretion in determining that the defendant's actions constituted a valid waiver of his right to counsel.

"The due process clause of the fourteenth amendment to the United States constitution requires that certain minimum procedural safeguards be observed in the process of revoking the conditional liberty created by probation." *State* v. *Durkin*, 219 Conn. 629, 635, 595 A.2d 826 (1991), citing *Black* v. *Romano*, 471 U.S. 606, 610, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985). The United States Supreme Court first held in *Gagnon* v. *Scarpelli*, supra, 411 U.S. 790, that due process required the appointment of counsel in some probation revocation hearings. The right to counsel in such hearings was extended to all defendants in violation of probation hearings by § 53a-32 and has been treated by our Supreme Court as a right of constitutional dimension. *Gentry* v. *Warden*, supra, 167 Conn. 645; see also Practice Book § 44-1 ("[a] person . . . who is charged with violation of probation . . . and who is unable to obtain counsel by reason of indigency shall be entitled to have counsel represent him or her").

For a court to determine that a defendant has validly waived his right to counsel, it must be satisfied that such a waiver was made knowingly, voluntarily and intelligently. In making such a determination, the court is guided by Practice Book § 44-3, which provides in relevant part: "A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant: (1) [h]as been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled; (2) [p]ossesses the intelligence and capacity

to appreciate the consequences of the decision to represent oneself; (3) [c]omprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and (4) [h]as been made aware of the dangers and disadvantages of self-representation." Our Supreme Court has held, however, that a defendant "does not possess a constitutional right to a specifically formulated canvass [with respect to this inquiry]. His constitutional right is not violated as long as the court's canvass, whatever its form, is sufficient to establish that the defendant's waiver was voluntary and knowing. . . . In other words, the court may accept a waiver of the right to counsel without specifically questioning a defendant on each of the factors listed in Practice Book § [44-3] if the record is sufficient to establish that the waiver is voluntary and knowing." (Internal quotation marks omitted.) *State* v. *T.R.D.*, 286 Conn. 191, 204, 942 A.2d 1000 (2008).

In the present case, the defendant, in response to a question from the court at the outset of the January 4, 2007 hearing, stated initially his intention to represent himself. Following the defendant's subsequent unsuccessful application for a public defender, the court determined that the defendant had effectively, by means of his conduct, waived his right to the assistance of counsel. Such a determination must be viewed in light of the full record of the case. The violation of probation hearing, which began in April, 2007, already had been continued nine times to allow the defendant the opportunity to engage counsel for his defense by the time Judge Alander received the case. Although not determinative of the matter, this substantial delay in the proceedings, and the reason therefor, is pertinent to our review of the court's actions. As we have stated previously in a different context where a lawyer sought to withdraw, "[w]hile courts must be assiduous in their

defense of an accused's right to counsel, that right may not be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." (Internal quotation marks omitted.) *State* v. *Patavino*, 51 Conn. App. 604, 609, 724 A.2d 514, cert. denied, 249 Conn. 919, 733 A.2d 236 (1999). The record clearly reflects the court's awareness of the defendant's right to be represented by counsel, and it demonstrates the court's attempts to ensure the defendant's knowledge of such right. The court halted the proceedings on two occasions to provide the defendant an opportunity to apply for representation by the public defender. The defendant refused to apply on December 4, 2007, and then, on January 4, 2008, failed to fill out the application adequately.

The record further demonstrates that the court adequately and thoroughly canvassed the defendant with regard to his right to representation and the repercussions attached to his failing either to hire an attorney or to apply to the public defender. At the December 4, 2007 hearing, the court reviewed not only the defendant's right to counsel but also the charge against him and the potential penalties he faced upon a finding that he had violated his probation. The court also pointedly questioned the defendant with regard to the dangers of proceeding without representation. Although the court did not explicitly inquire of the defendant as to his level of education, it was entitled to conclude, on the basis of its extensive interaction with the defendant, that he possessed the capacity to understand the consequences of representing himself. In short, the court's canvass of the defendant prior to the commencement of the evidentiary phase of the hearing was sufficient to establish that the defendant, by means of his actions, voluntarily and knowingly waived his right to counsel.

## II

The defendant also claims that the court improperly failed to conduct an adequate investigation into whether

he was indigent and qualified for the services of the public defender.

A defendant facing a violation of probation hearing possesses "the right to retain counsel and, if indigent, shall be entitled to the services of the public defender . . . ." General Statutes § 53a-32 (a). This right also is reflected in our rules of practice: "A person . . . who is charged with violation of probation . . . and who is unable to obtain counsel by reason of indigency shall be entitled to have counsel represent him or her . . . ." Practice Book § 44-1.

The public defender's office is required to investigate the financial status of individuals requesting representation on the basis of indigency. See General Statutes § 51-297 (a). We previously have noted that "the office of the public defender is the *only* entity upon which a statutory duty is imposed to investigate a claim of indigency"; (emphasis added) *State* v. *Guitard*, 61 Conn. App. 531, 538, 765 A.2d 30, cert. denied, 255 Conn. 952, 770 A.2d 32 (2001); and, further, that "[t]he applicant for public defender services bears the burden of proving indigency." (Internal quotation marks omitted.) Id., 537. Upon a determination by the public defender that an individual is ineligible for its services, "the individual may appeal the decision to the court before which his case is pending." General Statutes § 51-297 (g).

General Statutes § 51-296 (a) requires that "[i]n any criminal action, in any habeas corpus proceeding arising from a criminal matter, in any extradition proceeding, or in any delinquency matter, the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent as defined under this chapter, designate a public defender . . . to represent such indigent defendant . . . ." The defendant cites § 51-296

as the sole authority for his claim that the court should have conducted further investigation into whether he was indigent. Characterizing the discussion between Ramia and the court as an "indigency hearing" and "an appeal of the public defender's determination that the defendant was not eligible," the defendant maintains that the court had a responsibility to "make an independent determination [of the defendant's eligibility] based on the public defender's investigation."

We conclude that the defendant cannot prevail in his claim that the court had a further duty to investigate his financial status. The defendant, in the first instance, bore the burden of demonstrating his indigency in applying for the services of the public defender. *State* v. *Guitard*, supra, 61 Conn. App. 537. The record reflects that, for reasons that are not entirely clear, the defendant failed to complete the public defender's application form adequately. Furthermore, our statutory scheme assigns the duty of investigating claims of indigency solely to the public defender. Id., 538. Ramia reported to the court on behalf of the public defender's office that, on the basis of the information provided by the defendant, including the fact that he had posted a significant amount of bonds in the past, the defendant was ineligible for appointed representation. Section 51-296 requires the court to appoint counsel to an indigent defendant following the public defender's investigation of such defendant's financial status. The section is silent as to what a court must do following the public defender's determination that a defendant is ineligible for services.

We need not determine whether the proceedings between the court and Ramia constituted an "indigency hearing," as the court was under no obligation to conduct such a hearing. We cannot agree with the defendant's claim that, in effect, the proceedings were "an appeal" of the public defender's determination that he

was ineligible for its services. Following the court's recess to allow the defendant an opportunity to apply to the public defender, the record contains no indication that the defendant ever challenged the public defender's determination as to his indigency or the court's acceptance of such determination. The defendant made no attempt whatsoever to avail himself of his right to appeal as provided for in § 51-297 (g). Although the defendant, representing himself, could not be expected to be aware of this specific statutory opportunity to appeal, neither did he at any point provide the court with notice that he disagreed with and did not accept the determination of the public defender. Absent any statutory or other duty to conduct further investigation into the public defender's indigency determination or any cognizable appeal of the determination by the defendant, the court was entitled to accept the report of the public defender and proceed with the violation of probation hearing as it did.

The judgments are affirmed.

In this opinion the other judges concurred.