******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

McDONALD, J., with whom ROBINSON, J., joins, dissenting. Prior to his criminal trial, the petitioner, Gene Newland, was a gas station employee making less than $10 per hour. His only asset was a piece of residential property with limited equity that was encumbered by a mortgage in default. Despite submitting two applications for legal representation to the public defender's office in Danielson, that office twice denied the petitioner its services because he owned real estate, even though there was no information to suggest his modest equity in the property was accessible to him while his mortgage was in default. Having been denied the services of a public defender, the petitioner attempted, over an extended period of time, to retain a private attorney who would agree to represent him against serious sexual assault charges. The petitioner repeatedly informed the trial court, over a period of two years, that he could not find an attorney who would represent him with the financial resources he had available to him. The trial court deemed the petitioner's inability to secure private counsel as an "implied waiver" of the petitioner's right to counsel, and compelled him to face the state's charges against him without legal representation. Applying an unduly rigid view of the record, the majority concludes that the petitioner was not entitled to habeas relief on the basis of public defender error.

This case reveals fundamental flaws in our procedures for protecting an indigent criminal defendant's constitutional right to appointed counsel. In light of those glaring shortcomings, I would exercise our supervisory authority to adopt a prophylactic procedural rule to ensure that such a fundamental miscarriage of justice does not recur.

I need not decide whether to apply this rule retrospectively to the present case, however, because I disagree with the majority's conclusion that public defender error was not a proper basis on which to grant habeas relief. Even under the majority's cramped view of the record, this case raises the essential question of whether it is preferable for our habeas courts to address a meritorious claim supported by the petitioner's evidence and filings, even if not squarely raised in the petition, as long as there is no prejudice to the respondent, the Commissioner of Correction, or whether those courts should ignore that basis for relief and leave that matter to a subsequent habeas petition alleging ineffective assistance of habeas counsel. Given the fundamental interests implicated and the substantial delay attendant to successive habeas proceedings, I believe that the former course of action is more jurisprudentially sound. The majority avoids these problems in the present case only because it remands the case to the

habeas court to resolve the claims squarely raised in the petition and suggests the possibility of amending the petition to add a claim of public defender error. Such a remedy would not be available in most cases.

With respect to the merits of the claim of public defender error, I would conclude that the Appellate Court properly determined: (1) that the petitioner's claim was not barred by procedural default because, contrary to the respondent's position, the prejudice necessary to overcome such a default is presumed for claims of denial of counsel; and (2) that the evidence supported the habeas court's conclusion that the petitioner was entitled to prevail on this claim. *Newland* v. *Commissioner of Correction*, 151 Conn. App. 134, 148, 152–53, 94 A.3d 676 (2014).

I

I begin with the multiple procedural failures revealed by the record in this case. First, the petitioner was never informed that he had a statutory right to appeal the public defender's decisions deeming him ineligible for appointed counsel. See General Statutes § 51-297 (g). As of the time of trial in this case, the Office of the Chief Public Defender had no formalized procedure for ensuring that such information was communicated to a defendant. The public defender's office in Danielson "almost universally," but not always, orally communicated that information.

Second, the trial court, *Robaina, J.*, effectively informed the petitioner that he did not have a right to appeal the public defender's eligibility determination. The petitioner was told: "You either qualify for the public defender services or you don't, and that's a determination made by them *independent of the court.*" (Emphasis added.) There is currently no rule of practice or statute that requires the trial court to inform a defendant on the record of his statutory right to appeal such a determination to the trial court before which his case is pending. Nor is there any provision that prescribes either the procedure for initiating such an appeal or the obligations of the court in conducting such a proceeding. Nonetheless, the trial court's statement was at the very least misleading, and at best in direct conflict with the statute conferring a right of *judicial* review. See General Statutes § 51-297 (g) ("[i]f the Chief Public Defender or anyone serving under the Chief Public Defender determines that an individual is not eligible to receive the services of a public defender under this chapter, the individual may appeal the decision *to the court before which the individual's case is pending*" [emphasis added]).

Third, no one from the public defender's office ever offered, or was required by the trial court, to appear before the court to explain the basis of the denials, despite the numerous proceedings at which the peti-

tioner told the court that he could not afford private counsel but had been deemed ineligible for a public defender. A survey of our appellate case law reveals no uniform procedure in such circumstances. In some cases, a representative from the local office of the public defender has appeared in court without being compelled to do so to explain on the record why the defendant was deemed ineligible, thus providing the defendant an opportunity to contest or explain the factual basis for the denial. See, e.g., *State* v. *Henderson*, 307 Conn. 533, 541–42, 55 A.3d 291 (2012); *State* v. *Gamer*, 152 Conn. App. 1, 10–11, 95 A.3d 1223 (2014); *State* v. *Flemming*, 116 Conn. App. 469, 476, 976 A.2d 37 (2009). In some cases, the defendant has been provided with a list of attorneys who might be available to provide representation. See, e.g., *State* v. *Gamer*, supra, 11; see also General Statutes § 51-291 (11) (Chief Public Defender must "[m]aintain one or more lists of trial lawyers who may be available to represent persons in . . . appropriate matters on a case by case basis, as needed, which lawyers shall be selected by a judge of the court before which the matter is to be heard"). In some cases, the court has appointed a public defender as standby counsel. See, e.g., *State* v. *Henderson*, supra, 536. In others, like the present case, no such information or services was elicited or provided. Although I do not intend to suggest that any particular action is constitutionally mandated, the randomness of the process undermines the perception of fairness in our criminal justice system.

Given the fundamental interests at stake, however, I would exercise our supervisory powers over the administration of justice to adopt a prophylactic procedural rule: trial judges, upon being advised that a criminal defendant desires counsel and cannot afford a private attorney, but has been deemed ineligible for public defender services, would be precluded from trying that defendant as an unrepresented party unless a hearing is held at which: (1) a public defender appears before the trial court to explain why the defendant does not qualify for services under the applicable eligibility guidelines; (2) the defendant is apprised on the record of his statutory right under § 51-297 (g) to an independent judicial determination as to his eligibility for appointed counsel; and (3) the trial court has conducted that independent review of the defendant's financial resources, either sua sponte or at the request of the defendant, to ascertain the defendant's financial ability to retain counsel.[1] Only if the trial court finds that the defendant has the financial resources to retain competent private counsel at prevailing market rates in that judicial district should it decline to assign counsel to represent the defendant.[2] The trial court, of course, retains discretion to hold against the defendant any failure to cooperate with that inquiry.

In my view, this procedure is consistent with the

governing statutory scheme and the trial court's over-arching responsibility to appoint counsel for indigent defendants under General Statutes § 51-296 (a), insofar as the rules of practice are silent on this point and § 51-297 (g) does not prescribe any particular procedure for the "appeal" to the trial court from an adverse indigency determination by the public defender. Needless to say, I do not object to any efforts by either the Rules Committee of the Superior Court or the legislature to effectuate this supervisory directive with greater specificity.

## II

I need not decide whether this rule should be applied to the present case because, unlike the majority, I would conclude that the Appellate Court properly determined that the petitioner was entitled to prevail on a claim of public defender error. Nonetheless, the flaws revealed in this case that persuade me that we should adopt such a rule are relevant to my resolution of this issue. I begin this part of this dissenting opinion by explaining why the habeas court properly could grant relief on a claim of public defender error. I then address why the habeas court properly rejected the respondent's affirmative defense of procedural default. Finally, I explain why the evidence was sufficient to support the claim of public defender error.

### A

Public Defender Error As a Proper Basis for Relief

To place the record in this case in its proper context, we must be mindful of the underlying principles and parameters of our statutory scheme governing appointed counsel. "It is the duty of the state to provide adequate means to assure that no indigent accused lacks full opportunity for his defense . . . . The right to legal and financial assistance at state expense is, however, not unlimited. Defendants seeking such assistance must satisfy the court as to their indigency . . . . This has largely been accomplished through [public defender services] . . . which has promulgated guidelines that are instructive as to the threshold indigency determination. . . .

"[Section] 51-297 (a) requires the public defender's office to investigate the financial status of an individual requesting representation on the basis of indigency, whereby the individual must, under oath or affirmation, set forth his liabilities, assets, income and sources thereof. . . . Upon a determination by the public defender that an individual is not eligible for its services, the individual may appeal the decision to the court before which his case is pending." (Internal quotation marks omitted.) *State* v. *Henderson*, supra, 307 Conn. 540–41. "[Section] 51-296 (a) requires that, [i]n any criminal action . . . the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent

as defined under this chapter, designate a public defender . . . to represent such indigent defendant . . . ." (Internal quotation marks omitted.) Id., 541.

Under the chapter of our General Statutes governing public defender services, " 'indigent defendant' means . . . a person who is formally charged with the commission of a crime punishable by imprisonment and who *does not have the financial ability at the time of his request for representation to secure competent legal representation and to provide other necessary expenses of legal representation* . . . ." (Emphasis added.) General Statutes § 51-297 (f) (1). As our appellate courts noted long ago, "[i]ndigence must be conceived as a relative concept. An impoverished accused is not necessarily one totally devoid of means . . . nor must one be absolutely destitute to enjoy the benefit of the statute. . . . The simple and direct characterization made by . . . Justice Black in *Gideon* v. *Wainwright*, 372 U.S. 335, [344, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963)], is particularly apropos: an indigent is a person who is too poor to hire a lawyer." (Citations omitted; internal quotation marks omitted.) *State* v. *Harris*, 5 Conn. Cir. Ct. 313, 315, 250 A.2d 719 (App. Div. 1968). Thus, a defendant who lacks the financial ability to secure competent legal representation when seeking the services of a public defender but is denied those services has wrongfully been denied such services.

In considering whether a claim of public defender error was properly before the habeas court in the present case, I am mindful that "the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . [but] it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . The purpose of the [petition] is to put the [respondent] on notice of the claims made, to limit the issues to be decided, and to prevent surprise. . . . [T]he [petition] must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Citation omitted; internal quotation marks omitted.) *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 519–20, 876 A.2d 1178 (2005), overruled on other grounds by *State* v. *Elson*, 311 Conn. 726, 747, 754, 91 A.3d 862 (2014).

It is conceded that the petition specifically alleged trial court error and not public defender error. Nonetheless, in a claim of trial court error for accepting an "implied waiver" based on an incorrect determination of the petitioner's eligibility for public defender services, the latter error would be subsumed under the former. Indeed, the entirety of the record—filings, evidence, and argument at the evidentiary hearing—clearly reflects a broader theory that implicates public

defender error in relation to the claims in the petition. That theory was that the public defender's eligibility decision was improper because the petitioner was in fact indigent, but that he could prevail even without establishing that fact because his statements to the trial court: (1) should have compelled a conclusion that the petitioner did not voluntarily waive his right to counsel; and (2) should have prompted the trial court to conduct a further inquiry to determine whether the petitioner was entitled to appointed counsel. The petitioner, however, clearly argued that he was improperly denied appointed counsel. Specifically, in his reply to the respondent's return, in his pretrial brief, and in his opposition to the respondent's motion for summary judgment on the ground of procedural default, the petitioner asserted that he had been denied a public defender *but nonetheless lacked sufficient funds to hire private counsel.* Such statements are equivalent to the statutory definition of indigence, the standard that dictates whether the public defender's office and the court must assign a public defender. See General Statutes § 51-297 (f) (1) (indigent defendant is one "who does not have the financial ability at the time of his request for representation to secure competent legal representation and to provide other necessary expenses of legal representation"); see also General Statutes §§ 51-296 (a) and 51-297 (a) (imposing duties on court and public defender to appoint counsel for indigent defendant).[3] In his opposition to the respondent's motion for summary judgment, the petitioner unambiguously asserted that there was a material issue of fact as to whether he had voluntarily given up his right to counsel because he "was forced into this position, as he was *inappropriately deemed ineligible for the assistance of a public defender.*" (Emphasis added.)

In considering whether a claim is properly before the habeas court, we are obligated to consider whether it has been raised in such a way as to put the respondent on notice so that he can fairly and adequately respond to that claim. That requirement was met in the present case. The respondent had notice that this issue was implicated in the case and he has not established that the habeas court's shift in focus from trial error to public defender error prejudiced him.[4] The respondent's return and motion for summary judgment argued that the petition must fail because the petitioner had not appealed from the public defender's decision or disputed the basis of that decision. As previously indicated, the petitioner's opposition to the motion unambiguously asserted that there had been public defender error. From the very commencement of the evidentiary hearing, the respondent's objections reflected his view that the petitioner's evidence related to the propriety of the public defender's decision, not the trial court's decision.[5]

The *only* prejudice that the respondent claims arises

from the habeas court's consideration of public defender error is that, if he had known that such a claim was being advanced, he would have alleged procedural default due to the petitioner's failure to appeal the public defender's decision.[6] The habeas court, however, understood the respondent's affirmative defense of procedural default to extend to this claim, considered it, and squarely rejected it. Indeed, in response to the habeas court's directive that the respondent address in his posttrial brief whether a claim of public defender error properly could be considered, the respondent never claimed prejudice. He never argued that the evidence must be opened to allow him to present other evidence, or contended that he would be entitled to a continuance in order to respond to a claim of public defender error. Even in his appellate brief, the respondent makes no argument that he would have presented additional evidence or advanced a different litigation strategy. To the extent that the respondent implies that he was precluded from offering legal arguments in support of procedural default as to a claim of public defender error, it is unclear why such arguments could not have been presented in response to the habeas court's directive that the posttrial brief should address both whether that claim could be considered and whether the petitioner could prevail on that claim.

Accordingly, I am not only persuaded that the respondent was not unfairly surprised by the habeas court's consideration of public defender error, but that a contrary conclusion would not "do substantial justice between the parties." (Internal quotation marks omitted.) *Lebron* v. *Commissioner of Correction*, supra, 274 Conn. 520. Therefore, I would conclude that the habeas court properly considered whether the petitioner could prevail on this claim.

B

Whether a Claim of Public Defender Error Is

Barred by Procedural Default

The respondent contends that the petitioner's claim is barred by procedural default because the petitioner did not establish both cause and prejudice to overcome the default. More specifically, the respondent contends that the Appellate Court improperly concluded that the presumption of prejudice that applies to a court's *substantive* determination that there has been a denial of counsel also applies to the procedural default inquiry that precedes a determination on the merits. I disagree.

I begin with the general principles governing procedural default. "Although this court is not compelled to conform state postconviction procedures to federal procedures"; *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 182, 982 A.2d 620 (2009); "our own jurisprudence concerning habeas corpus procedural defaults has developed in tandem with federal habeas

corpus jurisprudence . . . ." Id., 180. This court has adopted the general rule in *Wainwright* v. *Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), requiring a habeas petitioner to "demonstrate good cause for his failure to raise a claim at trial or on direct appeal and actual prejudice resulting from the impropriety claimed in the habeas petition" before a court will entertain the merits of the substantive claim. *Crawford* v. *Commissioner of Correction*, supra, 191; see *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 409, 589 A.2d 1214 (1991). Actual prejudice in this context means "actual and substantial disadvantage, infecting [the criminal proceeding] with error of constitutional dimensions." (Emphasis omitted.) *United States* v. *Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); accord *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 570–71, 941 A.2d 248 (2008). The cause and prejudice standard "is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, [inadvertence] or ignorance . . . ."[7] (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, supra, 191.

In many cases, the prejudice inquiry for procedural default can substantially overlap or merge with the showing of harm required to prevail on a claim of constitutional error. See, e.g., *Johnson* v. *Commissioner of Correction*, supra, 285 Conn. 570–71 (concluding that similarity of prejudice necessary to prevail on claim of ineffective assistance of counsel to threshold showing of cause and prejudice to overcome procedural default makes it unnecessary to engage in latter inquiry). A claim of denial of counsel, however, is different.

It is a bedrock principle that "the right to counsel is the foundation for our adversary system. Defense counsel tests the prosecution's case to ensure that the proceedings serve the function of adjudicating guilt or innocence, while protecting the rights of the person charged. See, e.g., *Powell* v. *Alabama*, 287 U.S. 45, 68–69, 53 S. Ct. 55, 77 L. Ed. 158 (1932) ('[The defendant] requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence')." *Martinez* v. *Ryan*,    U.S.   , 132 S. Ct. 1309, 1317, 182 L. Ed. 2d 272 (2012).

Accordingly, "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Strickland* v. *Washington*, 466 U.S. 668, 692, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); see also *United States* v. *Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984) (prejudice presumed when [1] counsel completely denied, [2] when counsel denied at critical stage of trial, and [3] when counsel "fails to subject the prosecution's case to meaningful

adversarial testing"). This is an irrebuttable presumption. See *State* v. *Frye*, 224 Conn. 253, 262, 617 A.2d 1382 (1992) ("right to counsel is so basic that its violation mandates reversal even if no particular prejudice is shown and even if there is overwhelming evidence of guilt" [internal quotation marks omitted]).

Although the original rationale for this presumption was that prejudice "in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost"; *Strickland* v. *Washington,* supra, 466 U.S. 692; a more constitutionally significant rationale later emerged as the United States Supreme Court's structural error jurisprudence developed. The Supreme Court explained that trial errors occur "during presentation of the case to the jury and their effect may be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt. . . . These include most constitutional errors. . . . [S]tructural defects [however] . . . defy analysis by harmless-error standards because they affec[t] the framework within which the trial proceeds, and are not simply an error in the trial process itself. . . . Such errors include the denial of counsel . . . the denial of the right of self-representation . . . the denial of the right to public trial . . . and the denial of the right to trial by jury by the giving of a defective reasonable-doubt instruction . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *United States* v. *Gonzalez-Lopez*, 548 U.S. 140, 148–49, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006).

Particularly telling for our purposes is the distinction that the United States Supreme Court has drawn between assessing prejudice when a defendant has been deprived of the counsel of his choice and when a defendant has received ineffective assistance of counsel: "[I]f and when counsel's ineffectiveness 'pervades' a trial, it does so (to the extent we can detect it) through identifiable mistakes. We can assess how those mistakes affected the outcome. To determine the effect of wrongful denial of choice of counsel, however, we would not be looking for mistakes committed by the actual counsel, but for differences in the defense that would have been made by the rejected counsel—in matters ranging from questions asked on voir dire and cross-examination to such intangibles as argument style and relationship with the prosecutors. We would have to speculate upon what matters the rejected counsel would have handled differently—or indeed, would have handled the same but with the benefit of a more jury-pleasing courtroom style or a [long-standing] relationship of trust with the prosecutors. And then we would have to speculate upon what effect those different choices or different intangibles might have had. The difficulties of conducting the two assessments of prejudice are not remotely comparable." Id., 150–51. The

difficulties of assessing prejudice from a denial of counsel of choice would apply to an even greater extent when counsel is completely denied.

Thus, when a denial of counsel claim has been procedurally defaulted, these two lines of jurisprudence are ostensibly in tension. On the one hand, such a denial is legally presumed to result in prejudice. On the other hand, the general rule is that a petitioner is required to demonstrate prejudice to overcome a bar of procedural default. The question therefore is whether prejudice similarly should be presumed in the procedural default inquiry.

The courts that have addressed this question have universally resolved that question in the affirmative.[8] See *Robinson* v. *Ignacio*, 360 F.3d 1044, 1054–55 (9th Cir. 2004); *Shayesteh* v. *South Salt Lake*, 217 F.3d 1281, 1284 (10th Cir. 2000), cert. denied, 531 U.S. 1171, 121 S. Ct. 1139, 148 L. Ed. 2d 1003 (2001); *Guzman* v. *United States*, Docket No. C.A. 98-12086 (MLW), 2004 WL 3710110, *8–9 (D. Mass. June 4, 2004); *Coleman* v. *Ignacio*, 164 F.R.D. 679, 684 (D. Nev. 1996). Our Appellate Court has reached a similar conclusion. See *Dennis* v. *Commissioner of Correction*, 134 Conn. App. 520, 536–37, 39 A.3d 799 (2012).

I recognize that, in connection with structural errors other than denial of counsel, some courts have determined that prejudice should not be presumed for purposes of procedural default. See *Jones* v. *Bell*, 801 F.3d 556, 563 (6th Cir. 2015) (denial of self-representation claim not entitled to presumption), cert. denied sub nom. *Jones* v. *Smith*, U.S. , 136 S. Ct. 878, 193 L. Ed. 2d 735 (2016); *Ambrose* v. *Booker*, 684 F.3d 638, 649 (6th Cir. 2012) (denial of claim that jury was not fair cross-section not entitled to presumption), cert. denied, U.S. , 133 S. Ct. 993, 184 L. Ed. 2d 771 (2013); *Purvis* v. *Crosby*, 451 F.3d 734, 743 (11th Cir.) (denial of public trial claim not entitled to presumption), cert. denied sub nom. *Purvis* v. *McDonough*, 549 U.S. 1035, 127 S. Ct. 587, 166 L. Ed. 2d 436 (2006); *Commonwealth* v. *LaChance*, 469 Mass. 854, 857, 17 N.E.3d 1101 (2014) (denial of public trial claim not entitled to presumption), cert. denied, U.S. , 136 S. Ct. 317, 193 L. Ed. 2d 227 (2015); see also *Perkins* v. *Hall*, 288 Ga. 810, 829, 708 S.E.2d 335 (2011) ("[t]he general rule is that presumptions of harm that would have applied on direct appeal do not apply on habeas corpus to procedurally defaulted claims"). But see *Owens* v. *United States*, 483 F.3d 48, 64 (1st Cir. 2007) ("a defendant who is seeking to excuse a procedurally defaulted claim of structural error need not establish actual prejudice"). The principal authority cited in those cases is *Davis* v. *United States*, 411 U.S. 233, 93 S. Ct. 1577, 36 L. Ed. 2d 216 (1973). See, e.g., *Ambrose* v. *Booker*, supra, 649. In *Davis*, a federal prisoner collaterally attacked his conviction on grounds of unconstitu-

tional discrimination in the composition of the grand jury that indicted him, after failing to comply with a federal rule deeming such claims waived unless raised before trial. *Davis* v. *United States*, supra, 234–35. In rejecting the petitioner's reliance on case law deeming such a violation inherently prejudicial, the court stated: "The presumption of prejudice which supports the existence of the right is not inconsistent with a holding that actual prejudice must be shown in order to obtain relief from a statutorily provided waiver for failure to assert it in a timely manner." Id., 245; see also *Francis* v. *Henderson*, 425 U.S. 536, 542, 96 S. Ct. 1708, 48 L. Ed. 2d 149 (1976) (applying same rule to similar issue raised in collateral attack of state conviction).

I do not find this authority persuasive as applied to the present case for the following reasons. First, most of the courts that have refused to apply a presumption of prejudice to certain procedurally defaulted structural errors have indicated that a denial of counsel would be one of the limited circumstances in which such a presumption would still apply. See *Ambrose* v. *Booker*, supra, 684 F.3d 652; *Purvis* v. *Crosby*, supra, 451 F.3d 741; *Upton* v. *Jones*, 280 Ga. 895, 897, 635 S.E.2d 112 (2006); *Commonwealth* v. *LaChance*, supra, 469 Mass. 860. Indeed, the United States Supreme Court has recognized that "[i]t is only for *certain* structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. See *Arizona* v. *Fulminante*, 499 U.S. 279, [309–10, 111 S. Ct. 1246, 113 L. Ed. 2d 302] (1991) (giving examples)." (Emphasis added.) *United States* v. *Dominguez Benitez*, 542 U.S. 74, 81, 124 S. Ct. 2333, 159 L. Ed. 2d 157 (2004).

Second, *Davis* and *Francis* predate development of the United States Supreme Court's structural error jurisprudence, wherein the court emphasized the difficulty, if not impossibility, in certain cases of quantifying the prejudice arising from the constitutional violation. Indeed, as some courts rightly have pointed out, an assessment of prejudice becomes no more possible in one context than in the other. See, e.g., *Owens* v. *United States*, supra, 483 F.3d 64–65. Although some errors are deemed structural for reasons other than that their impact on the reliability of the verdict cannot be ascertained; see J. Blume & S. Garvey, "Harmless Error in Federal Habeas Corpus after *Brecht* v. *Abrahamson*," 35 Wm. & Mary L. Rev. 163, 185–87 (1993); it is clear that denial of counsel does not fall into this class of errors. See *United States* v. *Gonzalez-Lopez*, supra, 548 U.S. 150–51.

In the alternative, however, the respondent argues that no presumption of prejudice could apply to this case in any event because there has been no showing of a denial of counsel at the point of procedural default,

namely, the failure to appeal the judgment of conviction.[9] There is limited authority, not cited by the respondent, that lends some support to this position. See *Stokes* v. *Scutt*, 527 Fed. Appx. 358, 367–68 (6th Cir. 2013) (recognizing that petitioner's failure to raise claim on appeal that he was forced to represent himself at trial in violation of sixth amendment right to counsel might have been excused had he timely raised claim of ineffective assistance of *appellate* counsel); *Robinson* v. *Ignacio*, supra, 360 F.3d 1052–54 (petitioner established cause to excuse failure to raise claim of denial of sentencing counsel on direct appeal because stipulation had been entered into with state while that appeal was pending deemed such claim properly before habeas court in separate action).

This position ignores reality, especially in the present case. A defendant generally has twenty days to appeal a judgment of conviction. Practice Book § 63-1 (a). It is *trial* counsel who advises a defendant whether there are legitimate grounds for appeal. Trial counsel is deemed to have appeared in the appeal unless he or she is granted permission to withdraw his or her appearance in the case or an in lieu of appearance has been filed by other counsel. Practice Book § 62-8. A self-represented defendant who has not chosen self-representation voluntarily and who challenges his denial of counsel should not be presumed to have sufficient knowledge and resources to ascertain within that period whether he has a legally tenable basis to appeal. Cf. *Martinez* v. *Ryan*, supra, 132 S. Ct. 1317 ("[t]he prisoner, unlearned in the law, may not comply with the [s]tate's procedural rules or may misapprehend the substantive details of federal constitutional law"). Indeed, it seems wholly illogical to suggest that one who is presumed to have been prejudiced by the denial of counsel is somehow able to competently serve as his own counsel in deciding whether he has a tenable legal basis to appeal from the judgment in a trial in which he should not have been required to represent himself. Insofar as the respondent seems to suggest that the petitioner was required to apply for and be denied an appellate public defender, the petitioner had been told that his ownership of property was disqualifying. There is nothing in the record to indicate that this fact changed in the intervening period between the commencement and conclusion of the criminal trial. Accordingly, I would conclude that the Appellate Court properly determined that the habeas court properly presumed prejudice to excuse the procedural default.

C

Whether the Petitioner Established Public

Defender Error

The respondent also claims that the habeas court improperly concluded that the petitioner met his burden

of proof on a claim of public defender error. The respondent asserts three arguments: (1) the petitioner could not prevail without proving that the trial court's implicit determination that the petitioner did not prove his indigence was clearly erroneous; (2) the petitioner could not prevail without presenting his public defender applications because, in the absence of such evidence, the bases for the denial are unknown; and (3) even if the evidence that the petitioner presented could have been credited as having been presented to the public defender, it does not establish that the eligibility decision was improper. I disagree with each of these contentions.

Generally, "the trial court's assessment of the defendant's offer of proof pertaining to whether he was indigent and was, therefore, eligible for state funded expert assistance, is a factual determination subject to a clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *State* v. *Henderson*, supra, 307 Conn. 540.

In the present case, however, the respondent's arguments regarding the necessity of proving trial court error and of producing the public defender applications ignore the significance of a critical, unchallenged factual finding, as well as other facts plainly reflected in the record. The habeas court found that the petitioner had not been informed of his statutory right to appeal the public defender's decision. Judge Robaina advised the petitioner that the indigence determination is made by the public defender's office "independent of the court." Nothing that the trial court, *Hon. Russell F. Potter*, judge trial referee, said or did in conducting the waiver canvass would have disabused the petitioner of this notion. Judge Potter did not request that the public defender appear in court to explain the basis for the denials before making the implied waiver finding. The petitioner had no ground to dispute the factual basis for the denials, as he understood it. He believed that his mere ownership of property had automatically rendered him ineligible for public defender services.

We apply the deferential, clearly erroneous standard of review to a trial court's finding of indigence when a defendant has been given a reasonable opportunity to challenge the public defender's decision. For the reasons previously stated, that did not happen in this case. In the absence of a formal challenge to the public defender's decision, Judge Potter simply assumed the correctness of the determination of ineligibility.[10]

I recognize that there is Appellate Court case law holding that, even when there is a question whether

the defendant had notice of the right to appeal the public defender's decision, a trial court's determination that a defendant is not indigent may be upheld. See *State* v. *Flemming*, supra, 116 Conn. App. 483 ("Although the defendant, representing himself, could not be expected to be aware of [the] specific statutory opportunity to appeal, neither did he at any point provide the court with notice that he disagreed with and did not accept the determination of the public defender. Absent any statutory or other duty to conduct further investigation into the public defender's indigency determination or any cognizable appeal of the determination by the defendant, the court was entitled to accept the report of the public defender and proceed with the violation of probation hearing as it did."). The circumstances of that case, however, are materially distinguishable from those in the present case. In *Flemming*, the public defender appeared in court and explained that the defendant's application had been denied because he previously had posted $200,000 in bonds and had not filled out the application completely. Id., 475. The defendant did not contest these facts; id.; which clearly would have provided a proper presumptive basis to deem the defendant ineligible. See *State* v. *Henderson*, supra, 307 Conn. 541 (defendant not entitled to public defender when $380,000 in bonds posted); *State* v. *Gamer*, supra, 152 Conn. App. 5, 11 (defendant not entitled to public defender when $200,000 surety bond posted, defendant appeared with private counsel, and public defender indicated that defendant had " 'considerable' " funds in bank account); see also *State* v. *Martinez*, 295 Conn. 758, 784, 991 A.2d 1086 (2010) (defendant not entitled to state funded DNA expert when defendant appeared with private counsel after refusing to permit public defender to represent him and failed to provide relevant information regarding assets); *State* v. *Guitard*, 61 Conn. App. 531, 539, 765 A.2d 30 (defendant not entitled to public defender when defendant appeared with counsel and admitted that he was not indigent), cert. denied, 255 Conn. 952, 770 A.2d 32 (2001).

For similar reasons, the petitioner is not precluded from obtaining relief due to his failure to obtain copies of his applications for public defender services to vindicate his right to appeal the eligibility determination. By the time the petitioner obtained counsel who could inform him of his right to challenge that determination—at the commencement of his habeas proceedings—the public defender's office had destroyed his applications.[11] Although the respondent suggests the possibility that, in the absence of the applications, we cannot be sure that the petitioner was not deemed ineligible because he failed to provide complete information to the public defender regarding his assets and liabilities; see, e.g., *State* v. *Flemming*, supra, 116 Conn. App. 475; *State* v. *Kennedy*, 315 Wis. 2d 507, 521–22, 762 N.W.2d 412 (2008); the record in the present case indi-

cates otherwise. Raymond Canning, the Chief Public Defender for the judicial district of Windham at Danielson, testified that the procedure in the Danielson office, following the submission of an application, is to send a notice to the state's attorney, through the marshal, with one of three categories checked off: granted, denied, or further information needed. The record indicates that the state's attorney agreed that the petitioner's applications had been denied.

Having concluded that our review is focused on the propriety of the habeas court's conclusion that the public defender's eligibility determination was erroneous, I now turn to that question. Because there is no precedent for review of a habeas court's determination of public defender error, I first must determine the appropriate standard of review. I conclude that the habeas court's finding of indigence should be reviewed under the clearly erroneous standard, the same standard used to review a trial court's finding of indigence following an appeal of the public defender's decision of eligibility for services. *State* v. *Henderson,* supra, 307 Conn. 540; see *Sanchez* v. *Commissioner of Correction,* 314 Conn. 585, 604, 103 A.3d 954 (2014) ("habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous" [internal quotation marks omitted]). The habeas court, however, must consider all of the factors that would be relevant to a determination of eligibility for public defender services. In assessing all of those factors, it is important to underscore that "[t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) Id.

Under this standard of review, I conclude that the habeas court's finding that the petitioner was eligible for defender services from the time his second application was denied in December, 2008, through the waiver canvass in April, 2009, cannot be deemed clearly erroneous.[12] The habeas court properly could credit the petitioner's testimony that all of the information provided to that court regarding his income, assets, and liabilities also had been provided to the public defender when he submitted his applications for services. The court credited the petitioner's testimony and documentary evidence regarding his low wage employment and lack of funds in any bank account. These factors made the petitioner presumptively income eligible for public defender services in light of the serious charges he faced.

The majority argues, however, that the petitioner neither established his income nor the public defender income guidelines for 2007 and 2008—proof that he did not intend to advance a claim of public defender error. The majority overlooks, however, evidence from which the habeas court could have drawn reasonable infer-

ences as to the relevant facts. The petitioner introduced into evidence his bank account statements for 2007, 2008, and 2009. He testified before the habeas court that he had worked the third shift at the Xtra Mart Mobil station in Dayville in both December, 2008, and April, 2009. The transcript of the April, 2009 waiver canvass that was offered into evidence at the habeas court revealed that the petitioner cited the same shift and employer, along with his weekly wage ($300 to $350), when asked by the trial court about his current employment. Therefore, the habeas court logically would have inferred that the petitioner's income was the same or approximately the same four months earlier when he applied for a public defender. Similarly, with respect to the public defender income guidelines, in light of testimony establishing the basis of the modest annual adjustments to those guidelines, the habeas court reasonably would have inferred that the 2008 guidelines were not materially lower than those for the 2009 guidelines that the petitioner offered into evidence. Finally, public defender error in 2008 would have been the only denial logically relevant to the April, 2009 waiver canvass.

Having properly concluded that the petitioner was presumptively income eligible, the habeas court also credited evidence that supported its conclusion that the petitioner did not have other assets that properly would have rendered him ineligible. The habeas court credited evidence establishing that the petitioner's sole asset was residential property in which he had approximately $50,000 in equity based on a valuation performed by a bank in January, 2007.[13] The habeas court credited testimony from Brian Carlow, the Deputy Chief Public Defender for the Office of the Chief Public Defender, that under public defender policies and guidelines, equity in an asset must be readily accessible to disqualify an otherwise income eligible applicant. It was within the habeas court's province to credit Carlow's testimony over Canning's testimony that it is the policy of the public defender's office that equity in real estate: is generally not viewed as accessible to the same extent as cash or other liquid assets; was not viewed as a significant eligibility factor in the relevant period due to the economic downturn; and, would not be a factor at all if the real property was in foreclosure, barring unusual circumstances.[14] Accordingly, the habeas court's conclusion that there was public defender error was not clearly erroneous.

I therefore agree with the Appellate Court that the habeas court properly concluded that, " 'but for the public defender's erroneous eligibility determination, the petitioner would not have "implicitly" or otherwise waived his right to counsel, and the trial court would not have accepted the "implicit" waiver had it known of the petitioner's eligibility.' " *Newland* v. *Commissioner of Correction*, 151 Conn. App. 145. Accordingly,

I respectfully dissent.

[1] I recognize that this supervisory directive would have the practical effect of overruling the Appellate Court's decisions in *State* v. *Flemming*, supra, 116 Conn. App. 482, and *State* v. *Guitard*, 61 Conn. App. 531, 538–39, 765 A.2d 30, cert. denied, 255 Conn. 952, 770 A.2d 32 (2001). In those cases, the Appellate Court held that the trial court was not required to conduct an evidentiary hearing when the defendant raised the issue of indigency and that the office of the public defender is the only entity upon which a statutory duty is imposed to investigate a claim of indigency.

[2] There is a statutory mechanism to address circumstances in which it later becomes apparent that a defendant in fact has sufficient resources to obtain private counsel. See General Statutes § 51-298.

[3] The guidelines and policies promulgated by the Public Defender Services Commission are intended to assess whether a defendant is indigent. See General Statutes §§ 51-296 (a) and 51-297 (a). Indigence is statutorily defined to mean that the defendant lacks the financial resources to hire competent counsel. See General Statutes § 51-297 (f). Therefore, if a defendant advances a claim that the public defender's office determined that he was not eligible for its services but he could not afford to hire private counsel, he is effectively asserting that the public defender determined that he is not indigent, when in fact he is indigent. In other words, the defendant is challenging the public defender's decision that he is not entitled to appointed counsel.

[4] Even if I were to assume that it is the petitioner's burden to prove that the respondent would not be, or was not, prejudiced by consideration of the issue of public defender error, I would conclude that the record establishes sufficient facts to make a prima facie showing.

[5] To the extent that the majority contends that evidentiary deficiencies in support of a claim of public defender error demonstrate that the petitioner did not advance such a claim at the habeas trial, I address those matters in part II C of this dissenting opinion.

[6] It is telling that this claim of prejudice was advanced in a footnote in the respondent's brief, appended to a single sentence in the body of the brief asserting that "[s]uch a shift constituted surprise to the respondent, and much of the evidence in that regard was admitted over the respondent's objection." I note that the respondent has not claimed on appeal that the evidence on which the habeas court based its decision was admitted in violation of any rule of evidence or that the respondent was in any way impaired in responding to a claim of public defender error other than his purported inability to assert a procedural default defense. Indeed, the respondent conducted a vigorous cross-examination of the petitioner's witnesses.

The majority notes that the respondent filed an objection to certain materials appended to the petitioner's posttrial brief regarding the state of the housing market during the relevant period. The habeas court did not rule on the objection, but never cited those materials in its decision. The habeas court exclusively relied on the testimony of Brian Carlow, the Deputy Chief Public Defender for the Office of the Chief Public Defender, as the basis for its conclusion that the public defender's office would have given little weight to equity in real estate, absent unusual circumstances, given the state of the housing market. Had the court decided to rely on the materials appended to the petitioner's posttrial brief, it presumably would have explained why it properly could do so in light of the respondent's objection.

[7] The respondent does not separately challenge the cause prong, perhaps assuming that this prong also turns on whether a presumption applies. To the extent that the petitioner would be required to demonstrate such cause, I have no doubt that Judge Robaina's statement, which effectively communicated that there was no judicial review of the public defender's decision, would constitute such cause.

[8] Although these cases did not involve a claim that the denial of counsel resulted from an improper decision by the public defender's office, but rather an improper trial court decision, l see no meaningful basis on which they should be distinguished since the resulting constitutional violation is the same, no matter its source.

[9] This argument appears more directed to a claim of trial court error than public defender error. Nonetheless, because the public defender's error gave rise to the denial of counsel at trial, I address it for the sake of completeness.

[10] The respondent suggests that Judge Potter could have found the petitioner not to be credible. I note, however, that, in addition to the fact that Judge Potter made no such finding, the record strongly suggests a contrary conclusion. The numerous continuances that were granted to the petitioner would have suggested to Judge Potter that the other trial judges had credited

the petitioner's good faith efforts to obtain private counsel. In addition, Judge Potter's expression of regret at having to find an implied waiver suggests that he too credited the petitioner's representations.

[11] That being said, the petitioner could have done more to corroborate his testimony regarding his income and his inability to refinance his property or obtain loans on the basis of equity in the property. Nonetheless, it was within the province of the habeas court to determine whether the petitioner's testimony, in and of itself, was sufficiently credible as to these matters.

[12] The habeas court did not determine specifically whether the petitioner was indigent when he first was denied public defender services in 2007. I therefore limit my review to the period between the denial of the second application for public defender services and the waiver canvass.

[13] The habeas court made no express findings regarding the petitioner's testimony that none of that equity was accessible because a January, 2007 refinancing was for the maximum amount that the lender would allow.

[14] At oral argument before this court, Justice Zarella questioned the respondent as to whether it would have been appropriate for the trial court to take judicial notice of the fact that the foreclosure action, which was commenced in June, 2008, had been dismissed in December, 2008, several months before the waiver canvass. See *Citibank*, *N.A.* v. *Newland*, Superior Court, judicial district of Windham, Docket No. CV-08-5003211-S (December 15, 2008). The respondent was apparently unaware of this fact, but nonetheless agreed that it would have been proper for the trial court to have done so. See *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 522 n.13, 911 A.2d 712 (2006) (judicial notice of court records proper). I am not inclined to consider this fact for the following reasons. First, the respondent could have brought this fact to the habeas court's attention in his posttrial brief, thereby allowing the petitioner to address the significance of the dismissal. Factors that could be relevant would be the accessibility of the equity in light of the still existing default on the mortgage and the threat of recommencement of foreclosure proceedings, which in fact later did occur. In addition, the habeas court may have expressly credited the petitioner's testimony that he could not access the equity because he had refinanced the property in 2007 for the maximum amount that the lender would allow. See footnote 13 of this dissenting opinion. Second, Carlow's testimony, credited by the habeas court, provided an independent reason why the equity in the property would not be deemed readily accessible, namely, the economic downturn during the relevant period.

————————————————